UNITED STATES v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.†

(Circuit Court of Appeals, Fifth Circuit.　December 13, 1910.)

No. 1,895.

1. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

The first count of the petition alleged that defendant hauled a car used in interstate traffic when the car was not equipped with automatic couplers; the second count alleged that defendant in like manner used another car on the ends of which the grab irons were missing; and the third count alleged that defendant hauled one caboose car not equipped with automatic couplers. It appeared that the hauling or use of the three defective cars was on the same day, in the same train, and at the same time. Held, that the hauling or use of each of such cars constitutes a separate offense or violation of the federal safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, pp. 3174]), for which the penalty may be inflicted, and that the court below ruled incorrectly in assessing only one penalty for the three violations

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

2. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

In view of the purpose of the federal safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), to protect life and limb by the enforced equipment of every car, and its being made unlawful to haul or use any car not equipped as required, it seems that the construction contended for by defendant is so narrow as to defeat the intention of Congress. If the three defective cars had been hauled or used by the same engine, but only one moved at a time at intervals of one minute or less, it is not denied by defendant that three penalties could be recovered, for the reason that the statute makes unlawful the hauling or use of "any car," or each car, not equipped as required. It seems strained to say that the statute requires for its complete application an interval, and that the condemnation or penalty is not the same if the three cars are hauled or used at the same time.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

3. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

"Hauling" a defective car is not necessary to complete the offense against the federal safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), as both "hauling" and "using" are forbidden, and it seems that such a car may be "used," within the statutory meaning, otherwise than by being "hauled."

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

4. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—NATURE OF SUIT TO RECOVER PENALTIES.

The criminal cases referred to by defendant do not involve the construction of civil statutes imposing penalties, and the suit at bar is not a criminal case, but a civil suit.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

5. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

The safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) provides, in section 2, that it shall be unlawful for any common carrier engaged in interstate commerce by railroad "to haul or permit to be hauled or used on its line any car used in moving interstate traffic" not equipped with couplers coupling automatically, and in section 4 that it shall be unlawful for any railroad company "to use any car in interstate commerce" that is not provided with secure grab-irons or handholds in the ends and sides of each car. Section 6 provides that any such common carrier "running any train or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act shall be liable to a penalty of $100, for each and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.
† Rehearing denied January 10, 1911.

every such violation, to be recovered in a suit or suits to be brought by the United States district attorney." *Held*, that the unit of the offense under either section 2 or 4 was the hauling or use of a defective car, and that each such car so hauled or used, whether at different times or at the same time and in the same train, constituted a separate offense, which might be charged in different counts of the same petition under section 6.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*

Duty of railroads to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

In Error to the District Court of the United States for the Eastern District of Texas.

Action by the United States against the St. Louis Southwestern Railway Company of Texas. From the judgment, the United States bring error. Reversed.

J. W. Ownby, U. S. Atty., J. B. Dailey, Asst. U. S. Atty., and J. J. Doherty (Wade H. Ellis, Asst. to Atty. Gen., and Roscoe F. Walter, Special Asst. U. S. Atty., on the brief), for the United States.

Hiram Glass, W. L. Estes, and J. J. King (E. B. Perkins and D. Upthegrove, on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. This is an action to recover penalties under the safety appliance act (Act March 2, 1893, c. 196, § 6, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3175]), as amended by Act April 1, 1896, c. 87, 29 Stat. 85. After providing in the first section of the act that it shall be unlawful for any common carrier engaged in interstate commerce to use on its line any locomotive engine in moving interstate traffic not equipped with a power driving wheel brake and appliances for operating the train brake system, the following requirements are made as to the equipment of cars:

"Sec. 2. That * * * it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

"Sec. 4. That * * * it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

The penalty for the failure to comply with these requirements and the mode of enforcing payment is prescribed in section 6:

"Sec. 6. That any such common carrier using any locomotive engine, running any train, or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act, shall be liable to a penalty of one hundred dollars for each and every such violation, to be recovered in a suit or suits to be brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where such violation shall have been committed. * * *"

The petition contains three counts, each for the sum of $100. The first count is for a violation of section 2, alleging that the defendant

hauled a car (describing it) used in the movement of interstate traffic when the car was not equipped with couplers coupling automatically by impact. The second count is for a violation of section 4, and alleges that the defendant in like manner used another car on the ends of which the grabirons or handholds were missing. The third count, like the first, is for a violation of section 2, alleging that the defendant hauled on its line one caboose car (describing it) which was out of repair and not equipped with couplers coupling automatically by impact. Each count contained the necessary averments showing use of the respective cars in interstate commerce. The averments and proof showed the hauling or use of the three defective cars on the same day in the same train, and at the same time. The plaintiff asked for a recovery on each of the three counts. The defendant asked the court to instruct the jury:

"That it could not find in favor of the plaintiff on more than one count, on the ground that the uncontradicted testimony showed that there was only one movement of the train, and that said movement embraced the three cars testified about by plaintiff's witnesses."

The court sustained the defendant's contention, and directed a verdict for the plaintiff on the first count and for the defendant on the second and third counts. It is assigned here that the District Court erred in holding that the plaintiff could recover on only one count.

The statute is penal, and must, of course, be construed strictly; but this only means that acts must not be brought within the scope of punishment which are not within the terms of the statute; that the courts must not create offenses by mere construction. The intention of Congress, shown chiefly by the words used, must govern in the construction of penal as well as other statutes. A construction which would defeat the obvious intention of the Legislature should be avoided.

The first section of the act requires the engine used in interstate commerce to be equipped with driving wheel and train brakes. The second section requires the cars to be equipped with automatic couplers, and the fourth section requires the cars to be equipped with grabirons or handholds. The second and fourth sections made it "unlawful" to haul or use "any car" not equipped as required. It is plain that to use in interstate traffic an engine not equipped with driving wheel and train brakes would be a violation of the first section; that to haul or use any car not equipped with automatic couplers would be a violation of the second section; and that to use any car not equipped with grabirons or handholds would violate the fourth section.

Now we come to the sixth section, which prescribes the penalty, and its language must be construed in connection with the foregoing. This section, by its words, is made to apply to "any such common carrier using any locomotive engine, running any train, or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act." To see what is a violation of the act as to the equipment of the engine, we have only to refer to the first section; and, as to the equipment of the cars, to the second and fourth sections. The use of an engine or the hauling or use of "any

car" not equipped as required is a violation of the act.  After making it clear that the penalty is to be applied for a violation of "any of the provisions of this act," it is provided that the defendant who violates the provisions of the act "shall be liable to a penalty of one hundred dollars for each and every such violation." It seems clear that "each and every violation" refers to the requirements of the preceding sections, and that a penalty of $100 should be assessed for each—for the use of an engine not equipped as required; and for the hauling or use of any car not equipped as required.

The defendant contends that there has been but one violation of the act, and that, therefore, the court ruled correctly in assessing only one penalty.  The contention is that the defendant "has committed only one act; that it, by one act, hauled three cars, in one movement, not equipped with safety appliances as required by law." If this contention is well founded, a defendant who used on the same trip a defectively equipped engine and a defectively equipped car could be made to pay one penalty only, although the use of the engine is made unlawful by section 1 and the use of the car by section 2 or 4.  It would also follow that a defendant who hauled or used 20 defective cars could not be made to suffer a larger penalty than a defendant who hauled or used only one defective car.  It is difficult to believe that such was the intention of Congress.  The words of the sections—2 and 4—designating the unlawful act, point, it seems to us, at the car, and not at the train.  It is made unlawful to haul or use "any car." If it had been made unlawful to haul any train containing a car or cars not equipped as required, it is easy to see that the number of defective cars would not increase the penalty.  But the act makes the hauling or use of the defective car the unit of the offense, and prescribes the penalty "for each and every such violation." The hauling or use of each car is, it is admitted, a violation, for which the penalty may be inflicted.  But the contention is that the hauling or use of each car must be separate, or there is but one offense.  In view of the purpose of the act to protect life and limb by the enforced equipment of every car, and its being made unlawful to haul or use any car not equipped as required, it seems to us that the construction contended for by the defendant is so narrow as to defeat the intention of Congress.  If the three defective cars had been hauled or used by the same engine, but only one moved at a time at intervals of one minute or less, it is not denied by defendant's contention that three penalties could be recovered.  The three penalties would have been recovered, for the reason that the statute makes unlawful the hauling or use of "any car," or each car not equipped as required.  It seems strained to say that the statute requires for its complete application an interval, and that the condemnation and penalty is not the same if the three cars are hauled or used at the same time.

To show that only one offense could be committed by one hauling of the three cars, it is urged that the movement or hauling of a defective car is necessary to complete the offense.  But is that clearly true? In section 2 it is the hauling or using of the car that is condemned. In section 4 it is the using alone that is condemned.  The former sec-

tion reads: "It shall be unlawful * * * *to haul or permit to be hauled or used,"* etc. The latter reads: "It shall be unlawful for any railroad company *to use any car,"* etc. The penalty is imposed by section 6 when the car is "hauled or used." Is the defendant's contention true, that a hauling is absolutely necessary to complete the offense? The statute forbids hauling and using. Why were both words used? If the car was fully loaded and on the track ready to be started as a part of an interstate train, with engine attached and fired, and requiring only the touch of the engineer to start, would not the car be "used" or in use, within the statute, before it was hauled? If it was without the automatic coupler, so that the brakeman would have to go between the cars to couple them, it would clearly be within the mischief the statute was intended to prevent. "Used" has other meanings than "hauled." It is a broader word. To haul is to use, but may not a car be used within the statutory meaning otherwise than by being hauled? This question is not necessarily involved so as to require its decision, and is only relevant as bearing on the soundness of the defendant's contention, for in the instant case all three of the defective cars were, in fact, hauled.

The learned counsel for the defendant calls our attention to precedents in criminal cases—to larceny cases, where it is held that the defendant being charged with the larceny of several articles, if indicted and convicted or acquitted of stealing one of the articles, it bars a prosecution for the larceny of the others, all of the articles having been stolen at the same time; and to cases of murder, where two persons were killed at the same time by a single act, and it is held to constitute but one crime, and, if the defendant is convicted or acquitted as to one of the homicides, he cannot be tried for the other. These cases are dependent on familiar principles applicable to criminal law and procedure. The state is not permitted to split up one crime and prosecute it in parts, and there are rules against duplicity in indictments that are peculiar to criminal cases. And the constitutional provision against putting one in jeopardy twice for the same offense is sometimes controlling. The criminal cases referred to are inapplicable here. They do not involve the construction of civil statutes imposing penalties. The suit at bar is not a criminal case. It is a civil suit. Hepner v. United States, 213 U. S. 103, 29 Sup. Ct. 474, 53 L. Ed. 720, 27 L. R. A. (N. S.) 739. It is, in effect, an action of debt to recover penalties. Section 6 of the act makes it the duty of the district attorney to bring such suits. If it were a criminal case, provision would have been made for its prosecution by information or indictment. Being in effect an action of debt to recover penalties, the petition may, of course, properly contain several counts. The question of the right of recovery on each of the counts depends on the proper construction of the statute. The statute in question, on the point raised, has not been construed, so far as we are advised, but we are not without precedents construing analogous statutes.

An English statute was enacted to protect copyrights of paintings, drawings, and photographs. It was made unlawful to copy them without the consent of the proprietor. It was also provided that if any

person, knowing that such copy or imitation had been unlawfully made, "shall sell any copy of the work, or of the design thereof, such person, for every such offense, shall forfeit a sum not exceeding £10." The question arose as to whether an offender, under this statute, is liable to a penalty for every copy sold, or only on each contract of sale. In point of fact, 26 copies were sold, but they were sold in two parcels, each containing 13 copies, and it was contended that there were but two offenses. The court called attention to the words, "such person, for every such offense," shall forfeit to the proprietor of the copyright for the time being a sum not exceeding £10, and held that it was quite clear that this imposes a penalty for every copy sold. Ex parte Beal, 3 Q. B. (L. R.) 387, 394.

In the case of Commonwealth v. Jay Cooke et al., 50 Pa. 201, 207, it was said:

"The provision is that every 'banker or broker who shall neglect or refuse to make the return and report required by the first and second sections of this act, shall, for every such neglect or refusal, be subject to a penalty of one thousand dollars.' Adhering, then, to the words of the law, to what did the Legislature refer when it said, 'shall, for every such neglect or refusal, be subject to a penalty?' * * * Had the word 'every' been omitted, the language might have been dubious, but with it before us, as a part of the very letter of the act, we are admonished by the reference to resort to separate sections to ascertain the neglect or refusal referred to, and thus compelled to give the distributive word 'every' a reference to each: reddendum singula singulis."

See, also, Railway Company v. Moore, 33 Ohio St. 384, 31 Am. Rep. 543; Sturgis v. Spofford, 45 N. Y. 446, 452; Fisher v. N. Y. C., etc., R. R., 46 N. Y. 644, 658; Suydam v. Smith, 52 N. Y. 383, 388; Parks v. Railroad Company, 13 Lea (Tenn.) 1, 49 Am. Rep. 655.

We are of opinion that the District Court erred in holding that recovery could be had on only one count of the petition.

Judgment reversed and cause remanded.

## NOTE.

[a] (U. S. 1887) An act provided that for each day from and after a certain specified day the delinquent should forfeit and pay the sum of $25. *Held*, that the Legislature intended an accumulation of penalties, and the defendant could not atone for its delinquencies by the payment of a single penalty.—State v. Kansas City, Ft. S. & G. R. Co. (C. C.) 32 Fed. 722.

[b] (Ill. 1899) In order to support a recovery under Starr & C. Ann. St. c. 114, § 14, par. 83, imposing a penalty on a railroad company stopping any train or leaving any car or engine standing on its track when the same intersects a highway exceeding ten minutes, it is not necessary to show that there were persons present desiring to use the highway, but only that the train or cars obstructed the crossing.—Chicago & A. R. Co. v. People, 82 Ill. App. 679.

[c] (Ind. 1904) Burns' Ann. St. 1901, § 5187, providing that for each violation of the preceding section by a railroad company, in failing to report the time of the arrival of a train at a station, etc., the corporation shall forfeit and pay the sum of $25, authorizes the recovery of a cumulative penalty.—Southern Ry. Co. v. State, 72 N. E. 174.

[d] (Ind. 1905) Under Burns' Ann. St. § 5187, providing a penalty of $25 for each violation by a railroad company of section 5186, requiring every cor-

184 F.—3

poration operating a railroad within the state to bulletin trains, the state is not limited to a single penalty, but is entitled to recover a separate penalty for each violation proved.—Southern Ry. Co. v. State, 165 Ind. 613, 75 N. E. 272.

[e] (Iowa, 1903) Code, § 2073, was not unconstitutional as imposing a penalty on a railroad for the offense of its engineer, as it merely exacted a duty of the corporation of seeing that its employé acted in obedience to the statute.—State v. Chicago, M. & St. P. Ry. Co., 122 Iowa, 22, 96 N. W. 904, 101 Am. St. Rep. 254.

[f] (Iowa, 1903) Code, § 2073, declares that any engineer who fails to bring. his train to a full stop before crossing an intersecting railroad on the same level shall forfeit $100, and that the railroad shall forfeit the sum of $200. Held that, where the train failed to stop because the brakes were defective. so that the engineer was not guilty of the offense, the railroad was not liable. —State v. Chicago, M. & St. P. Ry. Co., 122 Iowa, 22, 96 N. W. 904, 101 Am. St. Rep. 254.

[g] (Iowa, 1903) The offense was not committed if the engineer attempted to stop the train, but was unable to do so.—State v. Chicago, M. & St. P. Ry. Co., 122 Iowa, 22, 96 N. W. 904, 101 Am. St. Rep. 254.

[h] (Kan. 1901) Leavenworth City Ordinance No. 1755, § 13, requires all railroad companies within the city to place flagmen at all crossings of graded streets, and provides for gates on certain streets when required by resolution of the council, and the punishment of any employé assisting in running any engine or train across such streets where no gates have been erected as required by such resolution. Section 21 prescribes a penalty for any person, company, or corporation violating any of the provisions of the ordinance. Held, that an engineer and fireman operating an engine across a graded street where no flagman was stationed could not be punished therefor; section 13, regarding flagmen, not being directed against any one but railroad companies, and the penalty therein provided referring only to the streets whereon gates have been ordered to be erected.—City of Leavenworth v. Hurdle, 63 Kan. 886, 66 Pac. 238; Same v. Islip, Id.

[i] (Ky. 1896) St. §§ 795–797, require every railroad company to furnish separate cars, of equal quality and conveniences, for white and colored passengers, and make a violation of such requirement a penal offense. Sections 799 and 800 make it the duty of the conductor to assign white and colored passengers to their respective cars, and impose a penalty for the violation of such duty. A special train, chartered by individuals, but in charge of a conductor and crew of employés of the railroad company, was furnished with separate cars, as required by statute, but colored passengers were refused permission by those chartering the train to occupy the cars designated for their use, and were required to ride in a baggage or tool car. Held, that the railroad company could not legally be convicted of a violation of the statute.— Louisville & N. R. Co. v. Commonwealth, 99 Ky. 663, 37 S. W. 79, 18 Ky. Law Rep. 491.

[j] (La. 1908) It was within the power of the General Assembly to require street car companies to provide separate, but equal, accommodations for white and colored passengers using their cars, and to enforce the same by penalties imposed upon the officers of such companies in case of their neglect of this legal duty.—State v. Pearson, 110 La. 387, 34 South. 575.

[k] (Mo. 1885) Evidence of a road crossing near a depot does not show that the crossing was a public one, within the meaning of the statute requiring railroads to ring a bell or sound a whistle when approaching public crossings, and attaching a penalty for its violation.—State, to Use of Clinton County, v. Chicago, R. I. & P. Ry. Co., 19 Mo. App. 104.

[l] (Mo. 1885) The statute requiring railroads to ring the bell or sound the whistle when approaching public crossings is penal, and should be strictly construed, so as not to enlarge the liability imposed, nor allow the recovery unless the party seeking it brings his case strictly within the terms of the statute.—State, to Use of Clinton County, v. Chicago, R. I. & P. Ry. Co., 19 Mo. App. 104.

[m] (Mo. 1899)   Rev. St. 1889, § 2608, providing for penalties against a railroad company for failure to give signals at crossings, is not in violation of Const. art. 11, § 8, providing that the "clear proceeds" of penalties and fines shall be paid into the school fund; the statute providing that one half thereof shall go to the informer and the other half to the county.—State ex rel. Cass County v. Missouri Pac. Ry. Co., 149 Mo. 104, 50 S. W. 278.

[n] (Mo. 1899)   Rev. St. 1889, § 2608, providing a penalty against a railroad company for failing to ring a bell or sound a whistle at a highway crossing, is within the power of the Legislature.—State ex rel. Cass County v. Missouri Pac. Ry. Co., 149 Mo. 104, 50 S. W. 278.

[o] (Mo. 1899)   A railroad company operating a road, though not an owner thereof, is liable for penalty provided by Rev. St. 1889, § 2608, for failing to give signals at a highway crossing.—State ex rel. Cass County v. Missouri Pac. Ry. Co., 149 Mo. 104, 50 S. W. 278.

[p] (Mo. 1899)   A railroad company is liable for failure to give statutory signals at crossings, though its engines were supplied with bells and whistles, and though, if the signals were not given, it was the fault of the servants of defendant, who had no notice of the failure before institution of suit.—State ex rel. Cass County v. Missouri Pac. Ry. Co., 149 Mo. 104, 50 S. W. 278.

[q] (Mo. 1903)   If there are a number of persons damaged by reason of the failure of a company to comply with Rev. St. 1889, § 2614, the penalty, all told, cannot exceed the sum indicated for the same neglect of duty.—McFarland v. Mississippi River & B. T. Ry. Co., 175 Mo. 422, 75 S. W. 152.

[r] (Mo. 1903)   Under Rev. St. 1889, § 2614, the plaintiff who first brings his case to judgment and recovers judgment for part or all of the penalty will be entitled to preference over all others, and so on, till judgments are recovered for the full amount.—McFarland v. Mississippi River & B. T. Ry. Co., 175 Mo. 422, 75 S. W. 152.

[s] (Mo. 1904)   Rev. St. 1899, § 1075, requiring railroads to stop all trains carrying passengers at a junction with other roads, and prescribing a penalty of $25 for each day for which the railroad refuses to comply, is a penal statute, and must be strictly construed, so as not to enlarge the liability imposed or allow a recovery unless the party seeking it brings his case strictly within the terms of the statute.—State ex rel. McPherson v. St. Louis & S. F. R. Co., 105 Mo. App. 207, 79 S. W. 714.