UNITED STATES v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.

(District Court, W. D. Texas, Waco Division. August 16, 1911.)

No. 77.

1. COMMERCE (§ 27*)—MASTER AND SERVANT (§ 13*)—CONSTITUTIONAL LAW (§§ 89, 238*)—INTERSTATE COMMERCE—POWER OF CONGRESS TO REGULATE —CONSTITUTIONALITY OF HOURS OF SERVICE LAW.

The federal hours of service act (Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 [U. S. Comp. St. Supp. 1909, p. 1170]), which makes it unlawful for any interstate carrier by railroad to permit any employé, as the terms "railroad" and "employé" are defined in section 1, to remain

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on duty for a longer period than those prescribed, is within the constitutional power of Congress to regulate interstate commerce, and is not unconstitutional as interfering with the liberty of contract, nor because of the classification of telegraphers by prescribing a different limitation for the hours of operators in offices or stations continuously operated day and night and those operated only during the daytime.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27;* Master and Servant, Dec. Dig. § 13;* Constitutional Law, Dec. Dig. §§ 89, 238.*]

**2.** MASTER AND SERVANT (§ 13*)—CLASS LEGISLATION—HOURS OF SERVICE ACT —CONSTRUCTION.

The hours of service act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1909, p. 1170]) is not a penal statute, strictly speaking, requiring the application of the rule of strict construction, its dominant purpose being remedial; and, construed with the liberality required to effect such purpose, there is no inconsistency or ambiguity in section 2, in that the proviso fixes different and shorter hours for telegraph operators than those prescribed for other employés by the first part of the section, and, as to such operators, the proviso clearly applies to the exclusion of the general provisions.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 13.*]

**3.** MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE ACT—CONSTRUCTION— TELEGRAPH OPERATORS—"CONTINUOUSLY OPERATED."

Under the hours of service act (Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 [U. S. Comp. St. Supp. 1909, p. 1170]), which in the proviso provides that no telegraph operator who transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to remain on duty for a longer period than 9 hours in any 24-hour period in all towers, offices, or stations continuously operated night and day, nor for a longer period than 13 hours in towers, offices, or stations operated only during the daytime, an office which is closed each day of 24 hours four times for a period of one hour each only is to be classified as one continuously operated night and day.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

**4.** MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE ACT—CONSTRUCTION.

Under the hours of service act (Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 [U. S. Comp. St. Supp. 1909, p. 1170]), which prohibits interstate carriers by railroad from permitting any telegraph operator employed in connection with the movement of trains in an office or place operated continuously night and day from remaining on duty for a longer period than 9 hours in any 24-hour period, a company does not avoid violation of the act by dividing the hours of service of an operator into two periods, where the aggregate hours of service each day of 24 hours exceed 9.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

At Law. Action by the United States against the St. Louis Southwestern Railway Company of Texas. Trial by the court. Judgment for plaintiff.

This suit was brought by the government to recover of the defendant penalties aggregating $5,000 for alleged violations of the act of Congress entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907 (34 Stat. pt. 1, p. 1415), and commonly known as the "Hours of Service Act."

The defendant demurred to and answered the petition, but substantially the same defenses, and those legal, are embodied in the two pleadings. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defenses relied on are enumerated in the following summary taken from the defendant's brief:

"(1) The act is unconstitutional because Congress has no power to pass an act regulating the hours of labor of employés on interstate railways, for the reason that the subject of hours of labor is so remote from the regulation of commerce that it is beyond the limit of the power granted to Congress.

"(2) Said act is unconstitutional for the reason that the power to regulate commerce granted to Congress is limited by the fifth amendment to the Constitution, which prohibits Congress in the regulation of commerce from depriving any person of liberty or property without due process of law, and the right of contract for personal service is both a personal liberty and a property right, which cannot be restrained except by reasonable restraints which are required by the common good or public welfare, and the act shows on its face that such is not true of the provisions of this act.

"(3) The act is unconstitutional and void because it shows on its face, when considered with reference to the subject-matter, that the purpose and intent of the act is to arbitrarily and capriciously interfere with the rights of the employer and employé to contract with reference to personal service.

"(4) The construction of the act as contended for by the government, and by the Interstate Commerce Commission, emphasizes and makes conclusive all of the objections above stated.

"(5) We submit that the only possible way of saving the act from being unconstitutional, and bringing it within the rule that it is an enactment required by the 'common good and public welfare,' is to hold that telegraphers are included within the body of section 2 of the act, and are subject to the provisions thereof, with the sole limitation contained in the proviso that the periods of 9 and 13 hours referred to in the proviso as periods of remaining on duty are intended to mean 'consecutive hours,' and did not mean that such telegraphers might not be permitted to labor for 'sixteen hours in the aggregate.'

"(6) Even under the fifth paragraph of this summary, which is the one just preceding, we submit that the constitutionality of the act, even with the construction therein referred to, is extremely doubtful, if the unconstitutionality is not apparent, by reason of the fact that the discrimination between telegraphers in stations that are 'continuously operated night and day' and stations that are 'continuously operated only during the daytime' is an arbitrary classification, and therefore renders the proviso void.

"(7) In any event, the government is not entitled to recover herein, for the reason that it is apparent from the allegations of the complaint and answer, and the agreed statement of facts, that there was no violation of the act on the part of the defendant for the reason that the defendant did not require or permit the telegraphers mentioned in the complaint to 'remain on duty for a longer period than nine hours in any twenty-four hour period in a tower, office or station continuously operated night and day,' it being admitted that the telegraphers mentioned were off duty, and the station closed, from 12 o'clock noon until 1 o'clock p. m. and from 12 o'clock midnight until 1 o'clock a. m.

"(8) Under the strict construction required of penal statutes, and of provisos in penal statutes, the court cannot add any words either to the statute or the proviso so as to change the meaning thereof, cannot adopt any construction which adds to or changes the meaning of the words used."

A jury was waived by the parties, and the cause submitted to the court upon the following stipulation as to the facts:

"(1) That the defendant is now and was at all times mentioned in plaintiff's petition a railway corporation and common carrier engaged in both interstate and intrastate commerce by railroad in the state of Texas; said corporation being organized under the laws of the state of Texas, with its principal office and place of business in Tyler, Smith county, Tex., and that it operates a main line from Texarkana, in Bowie county, Tex., to Gatesville, Coryell county, Tex., with various branch lines in said state.

"(2) That on the 29th day of January, 1910, one J. F. Scarff was employed by the defendant at its telegraph office in East Waco, McLennan county,

Tex., and within the jurisdiction of this court, as telegraph operator, to report, transmit, receive, or deliver orders pertaining to or affecting train movements by the use of telegraph, as will be hereafter set out, and was required and permitted to be on duty from 7 o'clock a. m. on said date until 12 o'clock noon, and during such period was permitted and required to report, transmit, receive, and deliver such orders as were necessary pertaining to or affecting train movements, and at 12 o'clock noon he was relieved from duty until 1 o'clock p. m., and during said hour was not required or permitted to perform any work or duty for the defendant, and at 1 o'clock p. m. said Scarff went back on duty and remained on duty in the same character of service until 6 o'clock p. m. on said date, and was engaged and employed in the same service of this defendant as will be hereafter set out.

"(3) That at 6 o'clock p. m. on said date he was relieved from duty and no other work or service was permitted or required from him, except that he was required to work for said two periods of 5 hours each, aggregating 10 hours in said 24-hour period.

"(4) That on said date of January 29, 1910, one W. R. Alford was employed by the defendant at its telegraph office in East Waco, McLennan county, Tex., and within the jurisdiction of this court, as telegraph operator, to report, transmit, receive, or deliver orders pertaining to or affecting train movements by the use of telegraph, as will be hereafter set out, and was required and permitted to be on duty from 7 o'clock p. m. on said date until 12 o'clock midnight, and during said period was permitted and required to report, transmit, receive, and deliver such orders as were necessary pertaining to or affecting train movements, and at 12 o'clock midnight he was relieved from duty until 1 o'clock a. m., and during said hour was not required or permitted to perform any work or duty for the defendant, and at 1 o'clock a. m. said Alford went back on duty and remained on duty until 6 o'clock a. m. on the following day, and was engaged and employed in the same service of this defendant as will be hereafter set out.

"(5) That at 6 o'clock a. m. on January 30, 1910, he was relieved from duty, and no further work or service was permitted or required from him until 7 o'clock p. m. on said date, and he did no other work or service except that he was required to work two said periods of 5 hours each, aggregating 10 hours in said 24-hour period.

"(6) That the same facts exist as to the work and service required and permitted to be done by said Scarff and Alford for the 30th and 31st days of January, 1910, and the 1st, 2d, and 3d days of February, 1910, as set up and alleged in plaintiff's amended petition.

"(7) That from 6 o'clock a. m. until 7 o'clock a. m., and from 12 o'clock noon to 1 o'clock p. m., and from 6 o'clock p. m. until 7 o'clock p. m., and from 12 o'clock midnight until 1 o'clock a. m. on each and all of said dates set up in plaintiff's amended petition, said operators were off duty as hereinbefore stated, and said telegraph office was closed, and no business of any kind or character was required or permitted to be done by said operators during said 4 hours in each 24-hour period, except in case of emergency.

"(8) That the lines of railway of defendant are located, and it is engaged in operating a line of railway, wholly within the state of Texas, and is not engaged in the operation, by itself, of any trains, except trains between points within the state of Texas, but, in conjunction with its connections, it is engaged in interstate commerce and traffic, and that, as to the employés mentioned and described in the various causes of action in plaintiff's petition, each and all of them are employed by this defendant for service on its line of railway within the state of Texas, and in handling orders affecting the movements of trains engaged in both interstate and intrastate commerce as hereinafter mentioned.

"(9) That said employés on each and all of said dates handled dispatches, reports, and orders affecting the movements of trains that were handling both intrastate and interstate traffic, both freight and passenger, and that all such traffic, either freight or passenger, was handled by this defendant over its own line and delivered at one of its termini to its connection for further transportation.

"(10) That the greater part of the duties incumbent upon said telegraph operators and performed by them in such service on said dates was with reference to matters and things in connection with the business of this defendant which were separate and apart from, and had no connection with, dispatches or orders pertaining to the movement of trains.

"(11) That in addition to the duties of receiving reports, and transmitting, receiving, and delivering orders pertaining to or affecting the movements of trains carrying both interstate and intrastate traffic, it was the duty of said telegraph operator to report, transmit, receive, or deliver orders pertaining to or affecting the movement of trains which moved entirely intrastate, and handled only intrastate business, such as excursion trains, work trains, cattle trains, and other trains handling exclusively intrastate business or traffic.

"(12) That there are sundry other telegraph operators in the employ of defendant and other railway companies within the United States who are not engaged in any way in the handling or dispatching of train orders, and sundry other operators who are engaged in handling or dispatching train orders who are employed at stations open only in the daytime, and sundry other employés at stations which are only open a part of each day and a part of each night.

"(13) That the office of chief dispatcher of defendant is located at Mt. Pleasant, Titus county, Tex., and that said office is open continuously during the 24 hours for the purpose of receiving reports and transmitting, receiving, or delivering orders pertaining to or affecting the movements of trains over the lines of defendant, and said telegraph operators in East Waco transmit to and receive train orders from said chief dispatcher at Mt. Pleasant.

"(14) That the management who controls the operation of defendant's line and the employment of said telegraph operators described in plaintiff's petition submitted said hours of service act to its legal department, and, acting on the advice of said department, fixed the hours of service of said operators, as hereinbefore stated, and contracted with said operators for the performance of said 10 hours of service in each 24-hour period, as hereinbefore stated."

Charles A. Boynton, U. S. Atty., and Philip J. Doherty, Special Asst. U. S. Atty.

E. B. Perkins, Daniel Upthegrove, and Scott, Sanford & Ross, for defendant.

MAXEY, District Judge (after stating the facts as above). When counsel for the respective parties submitted their able and interesting briefs in this cause, there were pending in the Supreme Court the two cases of the United States v. A. T. & S. F. Railway Company, 220 U. S. 37, 31 Sup. Ct. 362, 55 L. Ed. 361, decided March 13, 1911, and B. & O. Railroad Company v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878, decided May 29, 1911. The former involved the construction of the hours of service act, and the latter, among other questions, its constitutionality. In the present case counsel for the defendant contend, as the court understands their objections, that the act is repugnant to the Constitution in the following particulars: (1) In attempting to regulate the hours of labor of employés on interstate railways; (2) that it restrains the right of contract in violation of the fifth amendment of the Constitution, in that it arbitrarily and capriciously interferes with the right of the employer and employé to contract with reference to personal service; and (3) that the discrimination between telegraphers in stations that are "con-

tinuously operated night and day" and "stations that are continuously operated only during the daytime" is an arbitrary classification, rendering the proviso of the act void.

Reference will be hereinafter made to other objections of counsel which affect the construction of the act as applied to the facts of this particular case.

1. Consideration will be first given to the constitutional questions.

[1] At the outset it is well to state that the defendant, a Texas corporation, is engaged in both interstate and intrastate, or domestic, commerce, as shown by the stipulation of counsel, and that its telegraph operators, Scarff and Alford, upon the dates mentioned in the petition, handled dispatches, reports, and orders affecting the movements of trains that were handling both intrastate and interstate freight and passenger traffic. The defendant is clearly subject to the provisions of the statute, and the question to determine is whether the act itself is in harmony with the Constitution. In view of the ruling of the Supreme Court in the Baltimore & Ohio Case, extended discussion of the constitutional questions would seem to be unnecessary. Counsel in their elaborate briefs have presented every phase of these questions in an exceedingly interesting manner, and have submitted a large number of authorities which they claim support their contention that the statute was beyond the constitutional power of the Congress to enact. But the Supreme Court has otherwise decided. In the Baltimore & Ohio Case a bill was filed by the railroad company to annul an order made by the Interstate Commerce Commission. Discussing the question, Mr. Justice Hughes, as the organ of the court, said:

"Although the question was not specifically raised by the bill, it is now contended that the statute is unconstitutional in its entirety, and therefore no action of the commission can be based upon it. It is said that it goes beyond the power which Congress may exercise in the regulation of interstate commerce; that, while addressed to common carriers engaged in interstate transportation by railroad to any extent whatever, its prohibitions and penalties are not limited to interstate commerce, but apply to intrastate railroads and to employés engaged in local business. The prohibitions of the act are found in section 2. This provides that it shall be 'unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty' for a longer period than that prescribed. The carriers and employés subject to the act are defined in section 1 as follows: 'That the provisions of this act shall apply to any common carrier, or carriers, their officers, agents, and employés. engaged in the transportation of passengers or property by railroad in the District of Columbia or any territory of the United States, or from one state or territory of the United States or the District of Columbia to any other state or territory of the United States or the District of Columbia. or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States. The term "railroad" as used in this act shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement or lease; and the term "employé" as used in this act shall be held to mean persons actually engaged in or connected with the movement of any train.'

"No difficulty arises in the construction of this language. The first sentence states the application to carriers and employés who are 'engaged in

the transportation of passengers or property by railroad' in the District of Columbia or the territories, or in interstate or foreign commerce. The definition in the second sentence, of what the terms 'railroad' and 'employés' shall include, qualify these words as previously used, but do not remove the limitation as to the nature of the transportation in which the employés must be engaged in order to come within the provisions of the statute. If the definition in the last part of the sentence of the words used in the first part be read in connection with the latter, the meaning of the whole becomes obvious. The section in effect thus provides: 'This act shall apply to any common carrier or carriers, their officers, agents, and employés (meaning by "employés" persons actually engaged in or connected with the movement of any train), engaged in the transportation of passengers or property by railroad (meaning by "railroad" to include all bridges and ferries used or operated in connection with any railroad) in the District of Columbia or any territory * * * or from one state * * * to any other state;' etc. In short, the employés to which the act refers, embracing the persons described in the last sentence of the section, are those engaged in the transportation of passengers or property by railroad in the district, territorial, interstate, or foreign commerce defined; and the railroad, including bridges and ferries, is the railroad by means of which the defined commerce is conducted.

"The statute, therefore, in its scope, is materially different from Act June 11, 1906, c. 3073, 33 Stat. 232 (U. S. Comp. St. Supp. 1909, p. 1148), which was before this court in the Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. There, while the carriers described were those engaged in the commerce subject to the regulating power of Congress, it appeared that, if the carrier was so engaged, the act governed its relation to every employé, although the employment of the latter might have nothing whatever to do with interstate commerce. In the present statute the limiting words govern the employés as well as the carriers.

"But the argument undoubtedly involves the consideration that the interstate and intrastate operations of interstate carriers are so interwoven that it is utterly impracticable for them to divide their employés in such manner that the duties of those who are engaged in connection with interstate commerce shall be confined to that commerce exclusively. And thus many employés who have to do with the movement of trains in interstate transportation are by virtue of practical necessity also employed in intrastate transportation. This consideration, however, lends no support to the contention that the statute is invalid; for there cannot be denied to Congress the effective exercise of its constitutional authority. By virtue of its power to regulate interstate and foreign commerce, Congress may enact laws for the safeguarding of the persons and property that are transported in that commerce and of those who are employed in transporting them. Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Adair v. United States, 208 U. S. 177, 178, 28 Sup. Ct. 277, 52 L. Ed. 436; St. Louis & Iron Mountain Railway Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; Chicago, Burlington & Quincy Railway Company v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582, decided May 15, 1911, The fundamental question here is whether a restriction upon the hours of labor of employés who are connected with the movement of trains in interstate transportation is comprehended within this sphere of authorized legislation. This question admits of but one answer. The length of hours of service has direct relation to the efficiency of the human agencies upon which protection to life and property necessarily depend. This has been repeatedly emphasized in official reports of the Interstate Commerce Commission, and is a matter so plain as to require no elaboration. In its power suitably to provide for the safety of employés and travelers Congress was not limited to the enactment of laws relating to mechanical appliances, but it was also competent to consider, and to endeavor to reduce, the dangers incident to the strain of excessive hours of duty on the part of engineers, conductors, train dispatchers, telegraphers, and other persons embraced within the class defined by the act. And in imposing restrictions having reasonable relation to this end there is no interference with liberty of contract as guaranteed by the Constitution. Chicago, Burlington & Quincy Railroad Co. v. McGuire,

219 U. S. 549, 31 Sup. Ct. 259, 55 L. Ed. 328. If, then, it be assumed, as it must be, that in the furtherance of its purpose Congress can limit the hours of labor of employés engaged in interstate transportation, it follows that this power cannot be defeated either by prolonging the period of service through other requirements of the carriers or by the commingling of duties relating to interstate and intrastate operations."

But it is insisted by counsel for the defendant that the classification of the telegraph operators is arbitrary, rendering the act void, since it discriminates between operators engaged in stations that are "continuously operated night and day" and those employed in stations that are "continuously operated only during the daytime." Just why the classification is unconstitutional it is difficult for the court to conceive. And it is still more strange that the Supreme Court in construing the act in its entirety should have overlooked what counsel appear to regard as so vital an objection to its constitutionality. The proviso, referring to operators, train dispatchers, etc., was considered by the court, and there is no intimation in the opinion that the classification is either unjust or arbitrary. Where Congress has power to legislate in reference to the hours of labor of employés, no hard and fast rule of classification may for all cases be prescribed. Thus it was said by the court in Magoun v. Illinois Trust & Savings Bank, 170 U. S. 296, 18 Sup. Ct. 599, 42 L. Ed. 1037:

"There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things."

The objection of counsel that the classification in the act provided is unreasonable and arbitrary, and therefore void, is untenable.

[2] 2. It is also urged by counsel for the defendant that there exists in the provisions of the statute respecting periods of time such uncertainty and ambiguity as, under recognized rules for the construction of penal statutes, render it void or partially inoperative. In support of this contention it is said by counsel:

"The last clause of the first paragraph of the act reads: 'And the term employés as used in this act shall be held to mean persons actually engaged in or connected with the movement of any train.' The second paragraph of the act makes it unlawful for a carrier to require or permit 'any employé subject to this act to remain on duty for a longer period than sixteen hours consecutively.' The contention is that an operator, train dispatcher, or other employé who assists in receiving, transmitting, or delivering orders pertaining to train movements is a person 'actually engaged in or connected with the movement of a train,' and as such is an employé within the scope of the second paragraph of the act."

And it is further said by counsel, using substantially their own language, that the effect of the proviso contained in the second paragraph, restricting the employment of telegraph operators to 9 and 13 hours, "is to import an inconsistency and ambiguity into the meaning of the statute, and to make it difficult, if not impossible, to state with certainty which provision of the statute is applicable to the case of operators and train dispatchers." To the position assumed by counsel it may be replied: (1) The hours of service act is not, strictly speaking, a penal statute, requiring the application of the

rules of strict construction; and (2) a reasonable view of the act removes the difficulty in ascertaining the clause applicable to operators and dispatchers in contradistinction to the clause which embraces other employés. Of these, in their proper order.

It has been assumed that the act is not strictly a penal statute, and this assumption is justified by the ruling of the Supreme Court in a case involving the construction of the safety appliance act. Thus it was said by Mr. Chief Justice Fuller, speaking for the court, in Johnson v. Southern Pacific Co., 196 U. S. 17, 18, 25 Sup. Ct. 161, 162, 49 L. Ed. 363:

"The primary object of the act, was to promote the public welfare by securing the safety of employés and travelers, and it was in that respect remedial, while for violations a penalty of $100, recoverable in a civil action, was provided for, and in that aspect it was penal. But the design to give relief was more dominant than to inflict punishment, and the act might well be held to fall within the rule applicable to statutes to prevent fraud upon the revenue, and for the collection of customs, that rule not requiring absolute strictness of construction. Taylor v. United States, 3 How. 197 [11 L. Ed. 559]; United States v. Stowell, 133 U. S. 1, 12 [10 Sup. Ct. 244, 33 L. Ed. 555], and cases cited. And see Farmers' & Merchants' National Bank v. Dearing, 91 U. S. 29, 35 [23 L. Ed. 196]; Gray v. Bennett, 3 Metc. (Mass.) 522. Moreover, it is settled that, 'though penal laws are to be construed strictly, yet the intention of the Legislature must govern in the construction of penal as well as other statutes; and they are not to be construed so strictly as to defeat the obvious intention of the Legislature.'"

Speaking of the same statute, the following language was used by the Circuit Court of Appeals for the Fifth Circuit in the case of St. Louis Southwestern Railway Co. v. United States, 183 Fed. 771, 106 C. C. A. 137:

"On reason and weight of authority, it is considered that actions to recover the statutory penalties for violation of the safety appliance law (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) are so far civil in their nature that the strict construction applicable in criminal proceedings is not required, and the United States may recover upon the preponderance of evidence, and the trial judge may in proper cases direct a verdict."

See, also, United States v. St. Louis Southwestern Railway Co. of Texas, 184 Fed. 32, 106 C. C. A. 230; Hepner v. United States, 213 U. S. 103, 29 Sup. Ct. 474, 53 L. Ed. 720, 27 L. R. A. (N. S.) 739; C. B. & O. Ry. v. United States, 220 U. S. 559, 31 Sup. Ct. 612, 55 L. Ed. 582.

The language of the Supreme Court and of the Circuit Court of Appeals is peculiarly applicable to the hours of service act. If then the act be construed so as to effect the obvious intention of the Congress, may not the clause applicable to telegraph operators and train dispatchers be ascertained, not only with reasonable, but with exact, certainty?. This objection of counsel relates to section 2 of the act, which is in the following words:

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen

hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: Provided, that no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches reports, transmits, receives or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four hour period on not exceeding three days in any week: Provided further, the Interstate Commerce Commission may after full hearing in a particular case and for good cause shown extend the period within which a common carrier shall comply with the provisions of this proviso as to such case."   34 Stat. 1416.

It will be observed that the first part of the section refers to employés generally, subject to the act, and renders it unlawful for a carrier to require or permit any employé to be or remain on duty for a longer period than 16 consecutive hours, etc.   The proviso, however, excepts operators and train dispatchers from the general language thus employed, and provides for them a special rule.   For reasons deemed wise by the Congress, it was thought that telegraph operators and train dispatchers should have shorter hours for work and longer intervals of rest; and hence the provision directly applied to them, that their work hours should be limited to 9 and 13, respectively, accordingly as they might be employed in stations continuously operated night and day, or in stations operated only during the daytime.   Is there any uncertainty or ambiguity in the language of the act?   It is thought by the court that the language is too plain to be misunderstood.   The obscurity suggested by counsel is rather imaginary than real.   The proviso of section 2 relates solely to the operator, train dispatcher, or other employé "who * * * reports, transmits, receives, or delivers orders pertaining to or affecting train movements"; while the first part of the section embraces all other employés subject to the act.

[3] 3. It is further insisted by counsel for the defendant that the statute is not applicable to the facts of the present case, because, it is urged, the station or office in which Scarff and Alford were engaged as operators was not one continuously operated night and day.   The agreed facts pertinent to this contention are as follows:

"That from 6 o'clock a. m. until 7 o'clock a. m., and from 12 o'clock noon until 1 o'clock p. m., and from 6 o'clock p. m. until 7 o'clock p. m., and from 12 o'clock midnight until 1 o'clock a. m. on each and all of said dates set up in plaintiff's amended petition said operators were off duty as hereinbefore stated, and said telegraph office was closed, and no business of any kind or character was required or permitted to be done by said operators during said 4 hours in each 24-hour period, except in case of emergency."

It is also shown that Scarff worked five hours in the morning, to wit, from 7 o'clock a. m. until 12 o'clock noon, and five hours in the afternoon, to wit, from 1 o'clock p. m. until 6 o'clock during each day designated in the petition, and that Alford was engaged for each of said days from 7 o'clock p. m. until 12 o'clock midnight, and from 1

o'clock a. m. until 6 o'clock a. m.; thus working 10 hours in every 24 hours.

Was the East Waco station, within the meaning of the law, continuously operated night and day? In the case of United States v. A. T. & S. F. Railway Company, supra, where the office was closed three hours by day and three hours by night, the court strongly intimated that it was one continuously operated night and day. Upon this point Mr. Justice Holmes spoke as follows:

"We are of opinion that the government's argument cannot be sustained, even if it be conceded that Corwith was a place continuously operated night and day, as there are strong reasons for admitting. The antithesis is between places continuously operated night and day and places operated only during the daytime. We think that the government is right in saying that the proviso is meant to deal with all offices, and, if so, we should go farther than otherwise we might in holding offices not operated only during the daytime as falling under the other head. A trifling interruption would not be considered, and it is possible that even three hours by night and three hours by day would not exclude the office from all operation of the law, and to that extent defeat what we believe was its intent."

In the present case the office was closed each day of 24 hours four times for the period of one hour only. The court is clearly of the opinion that the office was within the contemplation of law continuously operated night and day. If the defendant may interrupt the continuity of the working hours by closing the office for an hour and thus evade the statute, why may it not do so by closing the doors for a period of 30 or even 15 minutes? But it can do so in neither case. It is not within the power of a carrier by resorting to shifts and evasions of any kind or character to nullify a statute obviously intended, as was the present act, to promote the safety of employés and of the traveling public.

[4] 4. Finally, it is insisted that the defendant has not violated the provisions of the act, for the reason that the operators were not engaged in work for a longer continuous period than 9 hours in a 24-hour period. And it is said by counsel in their brief:

"The way these operators were handled, they were on duty for two distinct periods in a 24-hour period. Those two periods added together made 10 hours, but neither one of them was longer than 9 hours. We therefore confidently submit to the court that neither of the allegations of facts shows that the statute was violated in letter or in spirit."

The words of the law are that no operator or train dispatcher, etc., "shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day," etc.

It has been shown (1) that the East Waco office was one continuously operated night and day; and (2) that the two operators remained on duty 10 hours for each day mentioned in the petition. Since, then, the office was a continuously operated night and day office, and Scarff and Alford were permitted to remain on duty for a longer time than 9 hours in a 24-hour period, it follows, if the language of the act be given its ordinary signification, that the defendant infringed the law in thus permitting its operators to work for a longer time than that prescribed by the statute.

The defendant having violated the law, the remaining question for consideration is, What penalty shall be imposed for its infraction? In this connection it is disclosed by the stipulation of counsel that in fixing the hours of service of the two operators the managers of the defendant relied upon the advice of the defendant's legal department. The law is of recent origin, and at the time of filing the petition in this case its constitutionality and construction were involved in doubt. In view of these considerations and the further fact that this is the first case to be prosecuted against the defendant, the court is not inclined to impose the extreme penalty provided by the act; but will content itself with the imposition of a penalty of $100 under each count of the petition, making in the aggregate the sum of $1,000.

And it is so ordered.