(52 South. 575.)

No. 17,995.

CITY OF NEW ORLEANS v. LENFANT et al.

(May 9, 1910. Rehearing Denied June 6, 1910.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS (§ 692*)—NUI-SANCE (§ 5*)—NUISANCE PER SE—WHAT CONSTITUTES.

An unauthorized obstruction upon a public street is a nuisance per se, but no lawful use which an individual makes of his own property is a nuisance per se, nor can it be made so by a municipal ordinance; and whether it is a nuisance, in fact, or per accidens, depends upon the circumstances and surroundings.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1493; Dec. Dig. § 692;* Nuisance, Cent. Dig. § 6; Dec. Dig. § 5.*]

2. MUNICIPAL CORPORATIONS (§ 605*)—RAIL-ROADS (§ 237*)—ORDINANCES—PARKING OF CARS.

An ordinance which absolutely prohibits the doing of things, upon property which appears to be the subject of private ownership, which are harmless, in themselves, and may or may not become nuisances, according to the manner in which they are done, is unconstitutional, because it seeks unduly to regulate and trammel the use of such property; and where it imposes arbitrary and unreasonable obligations it is illegal, for that reason.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1338; Dec. Dig. § 605;* Railroads, Dec. Dig. § 237.*]

*(Additional Syllabus by Editorial Staff.)*

3. RAILROADS (§ 237*) — "PARKING" CARS — REGULATION—VALIDITY.

"Parking," literally speaking, is the assembling of things or animals within a park, as the parking of artillery, or the parking of deer; and, as applied to an ordinance forbidding the parking of cars at a certain place, it means the assembling of cars, few or many.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 237.*

For other definitions, see Words and Phrases, vol. 8, p. 7745.]

4. NUISANCE (§ 1*)—"NUISANCE PER SE"— "NUISANCE IN FACT."

A "nuisance" is anything which incommodes, annoys, or produces inconvenience or damage. A "nuisance per se" is one which is always a nuisance in certain localities. A "nuisance in fact" is one which becomes a nuisance by reason of circumstances and surroundings.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 1-3; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4855-4866; vol. 8, p. 7734.]

Appeal from Second Recorder's Court, City of New Orleans; Charles J. Gauthreaux, Recorder.

Joseph Lenfant and others were convicted of violating an ordinance of the City of New Orleans, and appeal. Reversed and defendants discharged.

Denegre & Blair and Victor Leovy, for appellants. I. D. Moore, City Atty., and John J. Reilley, Asst. City Atty., for appellee.

## Statement of the Case.

MONROE, J. The defendants in this case are prosecuted under an affidavit which charges:

"That on or about the 25th day of October, 1909, on Elysian Fields street, between Dauphine and Marais streets, * * * one Jos. Lenfant, Jos. Kinkaid, Jno. McGuire, and Charles Marshall, each, employés and officers, did then and there willfully viol. Ord. 6,057 N. C. S., and particularly sects. 1, 2, 3, and 4, of said Ord. 6,057, N. C. S. All against the peace and dignity of the city of New Orleans."

By which we understand is meant that the parties named, acting as officers and agents, violated ordinance No. 6,057 new council series, which ordinance reads and provides as follows:

"Whereas, numerous complaints have been made, and are being made, in regard to the parking of cars by the Louisville & Nashville Railroad Company and the Southern Pacific Railroad Company, on Elysian Fields street, to the great discomfort of persons living on that street, and with increase of danger to all persons crossing Elysian Fields street; and, whereas, these complaints tend to show that such use of the neutral ground in the middle of Elysian Fields street by such railroad companies is wholly unnecessary on the part of said companies and has led to many serious accidents, and to the depreciation of property on that street; and, whereas, the operation of said companies, in parking their cars and making up their trains, can be, and ought to be, carried on off Elysian Fields street; now, therefore:

"Section 1. * * * That the Louisville & Nashville Railroad Company, the Pontchartrain Railroad Company, the Southern Pacific Railroad Company, and all other railroad companies which have hitherto used the neutral ground of Elysian Fields street for parking their cars and for carrying on the work of making up trains, watering engines and doing other similar yard work, be, and they are, hereby, prohibited from using said neutral ground for such purposes.

"Sec. 2. * * * That said neutral ground shall not be made use of, at any point, for the purpose of cleaning cars or locomotives or blowing out or watering engines, or cleaning furnaces, or switching cars or making up trains.

"Sec. 3. * * * That the said railroads shall, within thirty days after the passage of this ordinance, keep and operate gates on both sides of Elysian Fields street, at right angles, and it shall be the duty of the gatemen operating said gates to notify, by signals, all street cars and vehicles crossing said street of the approach of trains, and the fact that said gates are open shall be deemed and treated as notice justifying vehicles in crossing said street, without further special notice from the gatekeeper. Said gates shall be operated so as to interfere as little as possible with traffic and travel across Elysian Fields street.

"Sec. 4. * * * That all cars moving through said street shall, within thirty days after the passage of this ordinance, be provided with modern and efficient spark arresters and smoke consumers.

"Sec. 5. * * * That any officer, agent, or employé of any railroad company, violating any of the provisions of this ordinance, shall, upon conviction * * * be condemned to pay a fine of not more than $25, or imprisonment for not more than 30 days, or both, in the discretion of the recorder, each day that any of the provisions of this ordinance shall be violated constituting a separate offense."

Defendants filed a plea, in which they allege that the ordinance relied on by the prosecution is unconstitutional, for the reasons: That it contravenes various specified articles of the state and federal Constitutions, in that, if enforced, it will impair the obligations of contracts, divest vested rights, take or damage private property, without compensation previously made, operate as a regulation of interstate commerce, deprive defendants and the corporations named of their liberty and property without due process of law, and deprive them of the equal protection of the law; and that it is illegal because the things forbidden by it are legal and proper, and those commanded wholly unreasonable and ultra vires of the city of New Orleans. They further allege that the so-called "neutral ground" is a strip of land, say, 53 feet wide, separating the two roadways of Elysian Fields street, which is, and for many years has been, the private property of the Pontchartrain Railroad Company, having been purchased by it from Bernard Marigny in 1830, and the title to which, as so acquired, has been adjudicated upon and affirmed by the Supreme Court of this state in a litigation, to which the city of New Orleans was a party, and the record of

which is annexed to the plea; that the railroad companies named in the ordinance, other than the Pontchartrain, are using the property, under the authority of the latter, and defendants are using it under the authority of, and contracts with, said three companies; that the city of New Orleans brought a civil suit alleging that the said strip of land had been dedicated to public use, but, upon the filing of exceptions by the Pontchartrain Company, resorted to the present proceeding, to drive it, and those holding under it, off therefrom. Defendants annex to their plea the petition in said suit, and various titles, ordinances, contracts, etc., as establishing the facts alleged, and they sum up their position by averring that the different sections of the ordinance in question are unconstitutional, illegal, and unreasonable: (Section 1) Because it prohibits the Pontchartrain Railroad Company and the companies and persons acting under its authority, including defendants, from using the alleged neutral ground for parking cars, making up trains, watering engines, and other "yard work," all of which is necessary for the purposes of the traffic, interstate and intrastate, in which said companies and persons are engaged, and none of which constitute nuisances; (section 2) because it prohibits said parties from using the alleged neutral ground, at any point for cleaning cars or locomotives, or blowing out or watering engines or furnaces, or switching cars, or making up trains, none of which are nuisances; (section 3) because it imposes upon said parties the burden of erecting gates and maintaining watchmen, day and night, along the whole length of Elysian Fields street, including sparsely settled localities, where there is little traffic by day, and none by night, which is unnecessary and unreasonable; (section 4) because it fails to define modern and effective smoke consumers and spark arresters, and there are no smoke consumers for locomotives.

Counsel for the prosecutor objected to the plea, in so far as it sets up the title of the Pontchartrain Railroad Company, and objected to the documents annexed thereto, in support of said title, and the objections, as also an objection to the entire plea, having been sustained, defendants took their bills of exception. Bills were also taken to the exclusion of the documents referred to, when they were offered in evidence; to the exclusion of testimony offered to show the cost of erecting and maintaining gates between Claiborne street and the lake; and to the refusal of the recorder to inform defendants, after he had found them guilty, whether they were convicted under one, or another, or all, of the sections of the ordinance.

## Opinion.

The appellate jurisdiction of this court, which is here invoked, "extends to all cases in which the constitutionality, or legality, of * * * any fine, forfeiture, or penalty, imposed by a municipal corporation, shall be in contestation; * * * in such case," says the Constitution, "the appeal, on the law and the facts, shall be directly from the court in which the case originated to the Supreme Court." Const. art. 85. Under this grant, the inquiry into the facts of a case, thus made appealable is confined to the facts necessary to the determination of that question. State ex rel. Graffina v. Finnegan, Recorder, 52 La. Ann. 695, 27 South. 564; Louisiana Society, etc., v. Moody, 52 La. Ann. 1815, 28 South. 224; State v. Pearson, 110 La. 398, 34 South. 575.

From a reading of the preamble of the ordinance under consideration, it will be seen that its main purpose, as there declared, is to prohibit the "parking" of cars upon the neutral ground of Elysian Fields street, which practice is said to occasion great discomfort to the residents of that street, to be wholly unnecessary, and to have led to many serious

accidents and to the depreciation of property. The preamble further declares that the making up of trains on said neutral grounds can, and ought to be, carried on elsewhere, and the text of the ordinance prohibits and penalizes not only the parking of cars, and the making up of trains, but the watering of engines and other similar "yard work," including the cleaning of cars, locomotives, or furnaces, the blowing out of engines, the switching of cars for the making up of trains, and it proceeds to command the railroad companies, using the said neutral ground, to keep and operate gates on both sides of Elysian Fields street and to provide its "cars" with modern and efficient spark arresters and smoke consumers.

The ordinance appears to have been enacted either upon the theory that the neutral ground is part of Elysian Fields street, or upon the theory that it is immaterial whether it is a public highway or the private property of those who are prohibited from using it for the purposes mentioned. The contention of the learned counsel representing the city of New Orleans is that "this is, primarily, a prosecution to abate a nuisance," and "that it is perfectly immaterial whether the nuisance is committed on private or public property," and it was in accordance with the theory last mentioned that he objected to, and the recorder excluded, the evidence offered on behalf of defendants to show that the property belongs to the Pontchartrain Railroad Company, and that they (defendants) are using it under the authority of that company. We agree with the learned counsel that the purpose of the city is to abate what it, in effect, characterizes as a "nuisance," since the preamble of the ordinance declares that the things prohibited by it occasion discomfort to the residents, lead to accidents, and operate to depreciate property, and a "nuisance," in the broad sense, is anything which incommodes or annoys or pro-

duces inconvenience or damage. There are, however, "public nuisances" and "private nuisances," and a nuisance may be, at the same time, both public and private, if it, at the same time, affects the general public and also inflicts upon a private individual some special injury that is not inflicted upon the general public. There are, also, "nuisances per se," and "nuisances in fact," or "per accidens"; the former being those which are always nuisances, or always nuisances in certain localities, and the latter being those which become nuisances by reason of circumstances and surroundings. We do not, however, agree with the learned counsel that it makes no difference whether the act complained of as a nuisance is committed in a public street or upon private property. The city of New Orleans is vested with the power to regulate the use of its streets, in the interest of the public; but it could not, if it would, lawfully surrender a street to a railroad company as a park for the assembling of its rolling stock, or as a railroad yard for the watering and blowing out of its locomotives, the cleaning of its cars, the making up of its trains, etc., for that would be to give to a private concern that which belongs to the public and is inalienable, and such use of a street would constitute a nuisance per se. On the other hand, no lawful use made by an individual of his own property is a nuisance per se, nor can it be made so by municipal ordinance; the most that the municipal authorities can do being to suppress those uses which are nuisances per se, or upon inquiry, are found to be nuisances per accidens. Whilst, therefore, it is entirely competent for the city of New Orleans to prohibit the parking, cleaning, switching, etc., of cars, and the making up of trains, on Elysian Fields street, simply because it is the judge of what constitutes an obstruction in its streets, and an obstruction is a nuisance per se, a very different question is presented

when it undertakes to prohibit a railroad company from using its own property in that way; such uses not being nuisances per se, and the city having no power to make them so by ordinance. Considering the ordinance here in question, we have stated that the main reason for its enactment, as declared in the preamble, is to prevent the parking of cars on what is called the "neutral grounds of Elysian Fields street." But the defendants say that the so-called "neutral ground" is the property of the railroad company, under the authority of which they are using it, and, though they were denied the privilege of introducing their proof on the subject, it has been brought up in the record, with the bills of exception, and appears to make out a prima facie case, at least as to a strip of land having a width of 50 feet (French measure). We do not consider this a proper occasion upon which to express any final opinion upon the title so exhibited, but will remark that, in the case of Pontchartrain Railroad Company v. City of New Orleans, 27 La. Ann. 162 (the record of which was offered by defendants), the city was sued for damages for having destroyed the plaintiff's depot, which appears to have been built partly on the strip of land thus referred to, and partly on the roadways upon either side, and there was judgment in favor of plaintiff in the sum of $30,000. The opinion of the court (Morgan, Judge) begins as follows:

"Plaintiff purchased from Bernard Marigny a strip of land 50 feet wide. The purchase was made on the 23d of February, 1830. The title of Bernard Marigny to the land in question cannot be denied. The land was bounded on either side by a public street."

The opinion then goes on to state that in March, 1830, the city council authorized the company to make use of the streets on either side of its own land, to a width of 12 feet, and that, acting under the authority so granted, the company built "a depot which covered their own land; the outside pillars thereof, side walls, side columns, and other portions of the depot rested upon the two strips of 12 feet each, on either side of their property." That in 1870 the city revoked the permission to use said 12-foot strips and notified the company to vacate, and that there followed a litigation, pending which the city had the entire depot destroyed. Wherefore it was condemned in damages, as stated.

In State v. Marshall, 50 La. Ann. 1176, 24 South. 186, one of the defendants now before the court was prosecuted under an ordinance which denounced, as a nuisance, the parking of cars on the neutral ground of Elysian Fields avenue (being the thoroughfare here in question), and made it unlawful for a "railroad company to permit its engines, cars, or trains of cars to remain standing upon any portion of the ground known as Elysian Fields avenue, or the neutral ground, between the levee and Miro street, except so far as may be done by trains in motion." In that case, as here, the defendant sought to prove that the neutral ground (so called) belonged to the Pontchartrain Railroad Company, and the documents offered were excluded, and, as in this case, were brought up with the bills of exception. It appeared, too, that some parol testimony was taken down showing the company's possession of the property, and, upon the whole, Mr. Justice Breaux, as the organ of the court, said·

"We feel justified in considering the ordinance as one applying to the owner of the property, the 'neutral ground,' to which it (the ordinance) refers."

And, proceeding so to consider it, he said:

"We are compelled to decline to give the sanction of this court to an ordinance so needlessly restraining in its character."

On application for rehearing it was further said:

"The court desires to have it well understood that it does not decide that, as between the city of New Orleans and any one else who may claim any interest of any kind, the city is not the owner of 'Elysian Fields avenue,' or that

it is the owner. * * * The whole question related to the parking of cars on Elysian Fields. We decided that parking of cars was not, of itself, a nuisance."

In State v. Owen, 50 La. Ann. 1181, 24 South. 187, the defendant appears to have been prosecuted under the same ordinance for delivering and exchanging cars on the "neutral ground," and it was said by the court:

"Different from the 'neutral ground' on Canal street, these grounds, as we are informed, are private property. It sufficiently appears of record, for the purpose of this case, that the title is in the Pontchartrain Railroad Company, and that the grounds are partly in the possession and use of the Louisville & Nashville Railroad Company, with the written consent of the owner, the Pontchartrain Railroad Company. * * * We are not dealing with the possibilities of the ordinance, but with the ordinance as it is. Interpreting it as it reads, we do not think it is legal. It treats as a nuisance, per se, an exchange, which is manifestly not a nuisance, per se. The offense charged here is the delivery of cars and an exchange of cars. There is no question here of the improper carrying on of the work of exchanging cars and the injury thereby occasioned. The ordinance seeks to stop the work. In our view, the collecting of cars, or stopping them, on Elysian Fields, done in a fair and reasonable way, gives no ground of complaint."

In the instant case, as in those cited, we must assume, for the purposes of the question at issue, that the "neutral ground," referred to in the ordinance under which defendants are prosecuted, is the private property of the Pontchartrain Railroad Company, and that defendants are making use of it with the consent of the owner. "Parking" (literally speaking) is the assembling of things, or animals, within a park, as the parking of artillery, or the parking of deer, and we should take it rather to refer to things, or animals, not, at the moment, in actual service, but so held, to be used, within a longer or shorter period, as required. As applied in the ordinance, it means the assembling of cars, few or many, upon what we must assume to be private property. We are unable to discover in what way such parking constitutes a nuisance in fact, and still less a nuisance per se, since cars are ordinarily inanimate and inoffensive, and, so far as we can see, there can be no more reason why a person should not store them on his property than why he should not store other vehicles, or lumber, or bricks, or anything else, inoffensive, in itself, in which he deals, or which he chooses to store. As to the obstruction of the view, if the Pontchartrain Railroad Company owns the land in question, it has the right to rebuild its depot, or to build a succession of depots, extending from one cross-street to another, along Elysian Fields street, and the owners of the property on either side would have no better cause of complaint than would a property owner, upon one side of an ordinary (single-road) street, should the owner of the vacant square, on the other side, conclude to cover it with tall buildings. The same thing may be said of the other uses of the property which are prohibited by the ordinance. Though the things prohibited are harmless, in themselves, they are prohibited, absolutely, as only acts constituting nuisances per se are prohibited, and a person prosecuted under the ordinance can as well be convicted for doing those things in a manner which could inflict no legal injury and furnish no just cause of complaint as for doing them in such a way as to create a nuisance. The defendants before the court are not charged with doing the prohibited things in any particular way. The charge is that "they did, then and there, viol. ord. 6,057, N. C. S.," and, as we have said, the ordinance prohibits, absolutely, uses of (what, so far as appears, is) private property, which, in themselves, are legitimate and void of legal offense.

With regard to the command contained in section 3 of the ordinance to maintain gates, it applies as well to that portion of Elysian Fields street which is almost uninhabited as to that portion which is built up and is crossed by street cars and vehicles engaged in the ordinary city traffic, and we are of

opinion that the command is unreasonable, and hence illegal, in failing to distinguish between places where gates should be maintained and places where they would serve no useful purpose, but, according to the evidence, would constitute an element of danger. Section 4 of the ordinance requires that "all cars * * * shall * * * be provided with modern and efficient spark arresters and smoke consumers"—thus failing to distinguish between an ordinary car and a locomotive, and also failing to distinguish between locomotives which burn oil and those which burn coal. It appears from the testimony, however, that the locomotives of one of the companies named in the ordinance use oil, and emit no sparks, and we can take notice of the fact that the vast majority of "cars" carry no fire. Our conclusion, then, is that the ordinance No. 6,057, N. C. S., is unconstitutional, in that it seeks, unduly, to regulate and trammel the use of property which appears to be the subject of private ownership, and that it is illegal, because arbitrary and unreasonable.

It is therefore ordered, adjudged, and decreed that the convictions and sentences appealed from be annulled and set aside, and that the defendant be discharged.

PROVOSTY, J., takes no part, not having heard the argument.