(64 South. 797.)

No. 19,841.

CITY OF NEW ORLEANS v. PONTCHARTRAIN R. CO.

(March 16, 1914.)

*(Syllabus by the Court.)*

EJECTMENT (§ 93*) — SUFFICIENCY OF EVIDENCE.

When Bernard Marigny, in 1805 and 1809, laid out the Faubourg Marigny, he did not donate or dedicate to the public a 50-foot strip running through the center of Elysian Fields avenue. He reserved that strip for the purpose of a canal, connecting the Mississippi river and Bayou St. John. He subsequently sold the strip to the Pontchartrain Railroad Company.

[Ed. Note.—For other cases, see Ejectment. Dec. Dig. § 93.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by the City of New Orleans against the Pontchartrain Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

John F. C. Waldo, Asst. City Atty., and I. D. Moore, City Atty., both of New Orleans, for appellant. Denegre, Leovy & Chaffe, of New Orleans, for appellee.

SOMMERVILLE, J. Plaintiff is here claiming from defendant a strip of ground, 50 feet in width, formerly owned by Bernard Marigny, and extending through the center of Elysian Fields avenue, in the Third district of the city of New Orleans.

The question of ownership of that strip was incidentally referred to by us in a suit sounding in damages by the Pontchartrain R. Co. v. City of New Orleans, 27 La. Ann. 162, and again in criminal suits entitled State v. Marshall, 50 La. Ann. 1176, 24 South. 186, and State v. Owen, 50 La. Ann. 1181, 24 South. 187, and City of New Orleans v. Lenfant, 126 La. 455, 52 South. 575, 29 L. R. A. (N. S.) 642. In these cases we recognized the railroad company to be the owner of the property.

The city now squarely presents the question of title to the ownership of the property, and it appeals from an adverse decision.

The reasons for judgment of the trial judge are in accord with the views heretofore expressed by us, and we adopt them as our reasons for affirming the decree appealed from. They are as follows:

"This is an action, brought by the city of New Orleans against the Pontchartrain Railroad Company, to have declared the title to and ownership of 'A certain portion, or strip, of ground, lying in the center of Elysian Fields avenue, measuring fifty feet French measure, more or less, in width, and extending from Levee street, with the same width, the whole length of the old Faubourg Marigny to Goodchildren street,' and 'a certain portion, or strip, of ground, measuring at Goodchildren street, the head of the new Faubourg Marigny, sixty (60) feet in width by 280 feet in depth, and then fifty (50) feet in width, the whole depth of the new Faubourg Marigny to Celestine street,' now in the physical possession of the defendant corporation, to be in the people of the city of New Orleans, and dedicated to perpetual public use as a part of Elysian Fields avenue. That if the court should decree that the title to said strips of ground is not in the people of New Orleans, then there should be judgment declaring the defendant corporation, its successors and assigns, to be without right to construct and operate railroad tracks across or upon those portions of the streets, or intersections, crossing Elysian Fields avenue which traverse said center strips between Levee street and the rear limit of the new Faubourg Marigny, Celestine street, and ordering the defendant to move said tracks. Also that the court should decree that the defendant has no right to construct and operate railroad tracks on either of the two 12-foot strips on either side of the 50-foot center strips on Elysian Fields avenue. The plaintiff prays for an injunction enjoining the defendant from exercising the rights of ownership, or operating a railroad on the property described.

"The defendant, in its answer, denies that the city of New Orleans or the public has, or ever had, any title or possession to the property described in plaintiff's petition; denies that the property or any portion thereof, was ever dedicated to public use, or is or was a street or avenue. Defendant avers that the title and possession was in Bernard Marigny up to and at the time of the sale thereof by said Marigny to the defendant on February 23, 1830, by act before Felix De Armas, notary public; and by said purchase defendant acquired full possession and ownership of the portions or strips of land described in the petition, and has since then been in full possession thereof. That the plaintiff has repeatedly since then

acknowledged defendant's ownership. Defendant then denies specially all the allegations in plaintiff's petition.

"Bernard Marigny was the original owner of the land. By Act 39 of 1805 he was authorized by the Legislature to lay out his plantation into lots, squares, and streets, as the city council might deem proper, and to have a plan of such subdivision made; the streets to be vested in the corporation for public use.

"The plan was made, approved, and accepted by the city of New Orleans. In the act accepting the plan, May 21, 1805, between Marigny and the city, Marigny made a cession of property to the city of 50 feet of ground, in the whole depth of the faubourg, upon each bank of his canal as it is traced upon the plan. The width of his canal is given upon the plan as 50 feet, which he reserved to himself to open to that width, if he deemed proper, which reservation the mayor of the city acknowledged. A plan of the new faubourg was made in 1809, also showing the canal and cross-streets parallel to the river. On this plan, referring to the canal, it is recited: 'Mr. Marigny alienates no portion of it. He remains the exclusive proprietor of it. Alone he shall enjoy it at his pleasure, or let whomsoever he pleases enjoy it and upon such conditions as it pleases him to stipulate.' 'In a word, the ownership, possession, enjoyment or use of the said canal and basin are reserved in all their integrity to Mr. Marigny, who will dispose of them at his good pleasure, and will cause them to be hollowed or dug out fully, or in part, when he shall deem proper.'

"The new faubourg was made in the usual way—by making a plan and dedicating thereon certain streets and squares to the city for the public.

"The width of Elysian Fields avenue, according to the two plans, was 50 feet on each side of the canal, making 100 feet, and the canal in the center 50 feet, making in all 150 feet. Mr. Marigny had a canal part of the way on Elysian Fields avenue, leading to the cypress swamps, but he never completed it to the river where he had his sawmill, nor did he dig out the contemplated basin.

"Now the contention of the city is that Mr. Marigny gave to the city, for a street or promenade, the entire 150 feet, and established a servitude on it, in his favor, of a canal. That as the canal was never completed, the servitude lapsed for nonuser, and the city is now and has always been since then the owner.

"Nowhere is there any evidence that Mr. Marigny gave or donated to the city the land in the center of Elysian Fields avenue. On the contrary, it is clear he reserved it to himself when he laid off the faubourgs."

In a resolution of the city council of date October 23, 1811, wherein the city asserts that it has obtained from Mr. Marigny the right to build a levee across the front end of the proposed canal, where it was to have connected with the Mississippi river, it is stated that it shall not be construed that the city acquired any right of ownership over the 50 feet in width, as follows:

"Mr. Marigny has answered that he permits the city to continue, according to its desire, the levee in front of the canal, as well as to fill up the canal in the neighborhood of the road; always provided that it is well understood that whenever he shall open his canal to the river, or those who shall have the right so to do, he shall be able to make it of such width as he shall judge convenient up to that of 50 feet, and that the city should not take advantage, for any reason, to oppose such act; and further provided that the permission which he gives at the present time to the city shall not be construed by it as though it had acquired any right of ownership over the 50 feet of width running to the river, and which is beyond the levee, which shall be recognized by the council of the city as the property of himself, Marigny."

"The city again recognized his ownership of the land, not a servitude on their land, in 1810, by asking permission to take dirt from the canal."

And, Mr. Marigny's intentions and the extent of his donation to the city are further shown by him, February 23, 1830, when he sold this 50-foot strip of land, in its entirety, to the defendant in this cause. In that act of sale, he described himself as the owner of the tract of land, or "portion of earth," in dispute, and he transferred his title therein to defendant. He did not transfer a servitude on the land, as plaintiff contends was all that he owned, but he transferred the land to a railroad company, evidently for railroad purposes.

"When the Pontchartrain Railroad was incorporated in 1830, the Legislature and the city gave the company the right forever to lay its tracks on the two 12-foot strips from the river to the lake on the 50-foot strips on either side of the canal.

"The right to lay their tracks on the 12-foot strips carried with it the right to cross the intersecting streets, subject to such regulations as the city deemed proper to protect the public in the use of the streets. The right of the city to intersect the 50-foot canal strip by streets has been exercised for 80 years, and it must be presumed that the city had the consent of the railroad so to do, or that it at some time ac-

quired the right in a legal way, or that it has it now by prescription.

"It is claimed by the city that the railroad has never paid taxes on the 50-foot canal strip. The company claims that they have, when they paid on their roadbed. Be that as it may be, it does not affect the title to the property. The proper assessment is a matter between the board of assessors and the company; and may be settled in a separate suit between the city and the company, but cannot be settled in this proceeding.

"In 1872 the Pontchartrain Railroad Company sued the city for damages for demolishing its depot, erected partly on the 50-foot canal strip and partly on one of the 12-foot strips adjoining, forming part of the street. In that case the late Judge Collins, of the old Seventh district court, in an able opinion, decided that the railroad company had purchased the 50-foot canal strip from its absolute owner, Bernard Marigny. He gave judgment for $34,000. That judgment was affirmed by the Supreme Court, Judge Morgan rendering the opinion. It is found in 27 La. Ann. 162.

"The Supreme Court, in the case of the City v. Lenfant, 126 La. 459 [52 South. 575, 29 L. R. A. (N. S.) 642], a criminal case, affirmed its former ruling.

"In these opinions, nearly all the facts in this litigation are stated, and they almost constitute, as to this case, res adjudicata. They, however, do not, because it is the decree of the court, not its opinion, we are to look to, to ascertain if the facts have been adjudged.

"Through the painstaking industry of Mr. John F. C. Waldo, assistant city attorney, this case has been so ably prepared and presented to the court that all the issues as to the ownership of what is generally known as the neutral ground of Elysian Fields avenue can now be finally determined."

Judgment affirmed.

PROVOSTY, J., absent on account of illness, takes no part.