(99 South. 391)

No. 26198.

## CITY OF NEW ORLEANS v. ERNST.

(Dec. 3, 1923. Rehearing Denied by Division C Feb. 25, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Courts** ⬤⟿224(6)—**Supreme Court held to have jurisdiction where defendant attacks ordinance upheld below.**

A defendant who has been convicted of violating a city ordinance may appeal on the ground that the ordinance is unconstitutional, and the Supreme Court will take jurisdiction under Const. 1921, art. 7, § 10, par. 5, notwithstanding the constitutionality of the ordinance was upheld by the trial court.

2. **Municipal corporations** ⬤⟿79—**General act as to sale of milk held not repealed by city charter.**

Act No. 150 of 1910, regulating the production and sale of milk and milk products, under supervision of the state board of health, does not conflict with Act No. 159 of 1912, being the charter of the city of New Orleans, and providing that the commission council shall regulate the location and inspection and cleansing of dairies, etc., and effect may be given to the provisions of both statutes, and the act of 1910, which is a general law, is not repealed by the city charter.

.3. **Municipal corporations** ⊚═592(2)—City ordinance requiring tuberculin test of cows held invalid as in conflict with state law.

A municipal ordinance, relating to the operation of dairies, and requiring a tuberculin test of cows by veterinarians designated by the city board of health, *held* void as conflicting with Act No. 150 of 1910, relating to the sale of milk and milk products, and of the state Sanitary Code, adopted under authority of Act No. 79 of Acts Extra Sess. 1921, which was enacted to carry into effect Const. 1921, art. 6, § 11, and hence a conviction of one who had refused to comply with the ordinance was invalid.

4. **Municipal corporations** ⊚═642(4) — Objection not made below not available on appeal from conviction.

In a prosecution for violating an ordinance requiring cows to be tuberculin tested, in which defendant claimed the ordinance was in conflict with state laws and the regulations of the state board of health, where the state Sanitary Code was excluded on objection only that it was not properly identified, it cannot be urged on appeal that it was inapplicable because promulgated after the alleged violation.

5. **Evidence** ⊚═366(2) — State Sanitary Code held admissible when proved by secretary of state board of health.

In a prosecution for violating a city ordinance, requiring a tuberculin test of milch cows, wherein defendant claimed that the ordinance was void as in conflict with the state law, the state Sanitary Code was not inadmissible as not being properly identified, where it had been proved by the secretary of the state board of health.

Appeal from First Recorder's Court, City of New Orleans; Jacob R. Leininger, Recorder.

J. Ernst was convicted of violating an ordinance of the City of New Orleans, and he appeals. Conviction set aside, and defendant discharged.

George Montgomery and Arthur Landry, both of New Orleans, for appellant.

Ivy G. Kittredge, City Atty., W. E. Westerman, Asst. City Atty., and B. J. Daly, all of New Orleans (W. B. Hamlin, of New Orleans, of counsel), for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. Defendant, proprietor of a dairy in the city of New Orleans, is prosecuted under an affidavit charging him with operating said dairy without a permit, in violation of the provisions of Ordinance No. 16204, Council Series, as amended by Ordinance No. 5649, New Council Series.

Defendant demurred to the affidavit, setting up the illegality of the ordinance as being in contravention of the provisions of Act No. 150 of 1910, and attacking the constitutionality thereof by reason of its alleged conflict and inconsistency with the regulations of the Sanitary Code issued by the Louisiana state board of health on January 20, 1923, and also with a resolution adopted by said board on April 20, 1923, which Code and resolution, under section 2 of article 6 of the Constitution of 1921 are averred to prevail over ordinances and resolutions of parish and municipal boards of health in all matters and things provided for therein.

The demurrer was overruled, and defendant was found guilty as charged, and duly sentenced. He has appealed from his conviction and sentence.

[1] Appellee has moved to dismiss the appeal on the ground that this court is without jurisdiction ratione materiæ, because the constitutionality of the ordinance was maintained.

In support of the motion to dismiss, appellee refers to article 7, § 10, par. 5, of the Constitution of 1921, providing that the Supreme Court has appellate jurisdiction "in all cases wherein an ordinance of a * * * municipal corporation * * * has been declared unconstitutional." Appellee argues that it necessarily follows, from the language quoted, that this court is without jurisdiction in all cases where the lower court has upheld the constitutionality of the ordinance assailed. The argument is fortified by the citation of authorities construing similar grants of jurisdiction in prior Constitutions of the state of Louisiana.

A reference to same article, section, and paragraph of the Constitution relied on by appellee discloses that the appellate jurisdiction of this court also extends to "all cases wherein the constitutionality or legality of any * * * fine, forfeiture, or penalty imposed by a parish, municipal corporation, board, or subdivision of the state shall be in contest, whatever may be the amount thereof." It is this grant of appellate jurisdiction which is invoked by the appellant to sustain his appeal. We think it is sufficient. City of New Orleans v. Lenfant, 126 La. 455, 52 South. 575, 29 L. R. A. (N. S.) 642.

The motion to dismiss the appeal is therefore denied.

On October 11, 1922, the board of health of the city of New Orleans adopted the following resolution:

"Resolved, that after January 1, 1923, no dairyman will be given a permit by this board to sell milk unless the cows in his dairy have been tuberculin tested. This testing must be done by either Dr. Patterson or Dr. Upton, veterinarians of this board."

On January 20, 1923, the Louisiana state board of health adopted an amendment to the Sanitary Code, reading:

"Article ———. Milk shall not be offered for sale, barter or exchange after July 1, 1923, unless the milk comes from cows free from disease as determined by tuberculin tests and physical examination by a qualified veterinarian."

And on April 20, 1923, the said state board adopted paragraphs (a), (b), (c), and (e) under said article, reading as follows:

"(a) A qualified veterinarian for the purpose of this test shall be a reputable veterinary graduate commissioned by the Louisiana state board of health.

"(b) All veterinarians commissioned for the test must report all reacting animals found at any tests they may make, whether private or otherwise, to the Louisiana state live stock sanitary board and to the Louisiana state board of health.,

"(c) Official test charts will be furnished by the Louisiana state board of health on application. These test charts shall be made in triplicate upon completion of each test, one to be mailed to the Louisiana state board of health, one to the Louisiana state live stock sanitary board, and one to the federal inspector in charge of tuberculosis eradication in Louisiana.

"(d) The veterinarian making the test shall apply the official car tags to all animals tested and brand all reactors with a letter 'T' on the left jaw.

"(e) All reacting animals found under these tests must be slaughtered." Transcript, No. 26,200, p. 13.

The board of health of the city of New Orleans called upon defendant to comply with its resolution to have the tuberculin test applied to his cows, and the Louisiana, state board of health notified defendant to have his cows tested in accordance with the amendment to the Sanitary Code.

Defendant complied with the regulations of the state board and refused to meet the requirements of the city board. This prosecution followed.

The paramount jurisdiction as between the state board of health and the board of health of the city of New Orleans over the subject-matter of the controversy herein involved must be determined by the constitutional and statutory grants of jurisdiction to said boards.

In 1910 the state Legislature enacted Act No. 150 of that session. "To regulate the production and sale of milk and milk products and to provide penalties for its violation."

Section 2 of this act defines "diseased cows" to be:

"Cows showing clinical evidence of tuberculosis, splenic fever, anthrax or any local or general disease which is liable to render their milk unwholesome."

The duties of the state board of health and of municipal and parochial boards of health to enforce the provisions of the statute are established by section 4, which provides:

"That it shall be, the duty of the state board of health, and the various municipal and parochial health boards and health officers throughout the state to enforce the provisions of this act, and to see that violations thereof shall be prosecuted before the proper courts."

Section 7 vests the supervision and control of the production and sale of milk and milk products in the state board of health as follows:

"That the supervision and control of the production of milk and milk products and the sale of same, in this state, shall be vested in the state board of health, and said board shall have the power to make, publish and enforce any and all regulations therefor, which it shall deem necessary or proper to conserve, safeguard and maintain the public health, and to promote and encourage the production in this state, of milk and milk products; provided same be not in conflict with this act; and any parochial or municipal ordinance contrary to, or inconsistent with the provisions of this act, or the regulations of the state board of health, shall be null and void and of no effect."

It will be observed that the statute not only prescribes the method to be used by the health authorities, state, municipal, and parochial, in order to ascertain whether or not a cow is diseased, but it confers full supervision and control of the entire subject-matter upon the state board of health, subordinating thereto all municipal and parochial boards.

It is contended, however, on behalf of the prosecution herein that the ordinance is valid under the authority granted by the charter of the city of New Orleans (Act No. 159 of 1912); section 6, subd. 2, par. (c), providing that the commission council of the city has the power to "pass ordinances for the preservation of the health and comfort of the people of the city."

The cited section, subdivision, and paragraph of the act, in part provides:

"Sec. 6. The commission council shall have the power, and it shall be their duty, to pass such ordinances, and to see to their faithful execution, as may be necessary and proper:
*   .   *       *       *       *       *       *

"2. To maintain its cleanliness and health, and to this end:
*       *       *       *       *       *       *

"(c) To regulate the location of and inspection and cleansing of dairies, stables, cattle yards, * * * and all places of business likely to be or become detrimental to health or comfort, and to adopt such ordinances and regulations as shall be necessary or expedient for the protection of health and to prevent the spread of disease, and to maintain a good sanitary condition in the streets, public places and buildings, and on all private premises."

A mere reading of the statutes is sufficient to show that they do not cover the same subject-matter. The act of 1910 was plainly enacted to regulate the character or quality of milk to be produced and sold throughout the state, necessarily including the city of New Orleans, while the cited provisions of the act of 1912 were obviously enacted to preserve the health of the citizens of the municipality by authorizing the commission council to control the location of and inspection and cleansing of dairies, stables, cattle yards, etc. In the first case, the subject of the legislation is more than of local importance, it is a matter which is of interest to all the people of the state, and, therefore, a state instrumentality is designated to supervise and control it. In the second case, the provisions of the statute relate to matters of purely local sanitation and are to be carried into effect by the local boards of health.

[2] It is true that under section 4 of the act of 1910 a dual authority seems to be conferred, but a reference to the whole statute leads to the irresistible conclusion that the authority of the state board is paramount. It would appear to have been the intention of the lawmaker that the duties imposed, under section 4 of the act, upon municipal and parochial boards of health, should be performed in accordance with rules and regulations of the state board not in conflict with the provisions of the statute itself.

Since we find no conflict between the act of 1910 and the Act 159 of 1912, the city charter,

and that effect may be given to the provisions of both statutes, we are unable to assent to the argument of the learned counsel for the prosecution that the latter, being a special law, repealed the former, which is a general law. The rule of statutory interpretation on the point suggested may be stated as follows:

"A general law will not be held to be impliedly repealed by a law granting a charter to a municipal corporation, where effect may reasonably be given to the provisions of both laws." R. C. L. vol. 25, § 7, p. 929.

But over and beyond the interpretation and effect which must be given to the provisions of Act No. 150 of 1910, the prosecution herein is confronted with section 11 of article 6 of the Constitution of 1921, and Act No. 79 of the Extra Session of 1921, enacted in order to carry the constitutional article into effect. The section of the Constitution reads:

"The Legislature shall create for the state and for each parish and municipality therein, boards of health, and shall define their duties and prescribe their powers. The parish and municipal boards of health shall be subordinate to the state board of health."

With one important exception, this provision is the same as contained in the Constitutions of 1898 and 1913, art. 296. This exception is to be found in the additional words:

"The parish and municipal boards of health shall be subordinate to the state board of health."

An amendment having the same purpose in view as the added clause was rejected by the Constitutional Convention which framed the Constitution of 1898. See page 167 of the Journal, containing the proceedings of Monday, April 2, 1898. It does not appear that a similar attempt was made to insert the provision in the Constitution of 1913. However, as stated, the provision is contained in the Constitution of 1921, and has a most important bearing upon the respective rights of the state board of health and the various municipal and parochial boards of health throughout the state.

Act 79 of the Extra Session of 1921 was enacted to carry into effect section 11 of article 6 of the Constitution of 1921. Section 6 of the act vests in the state board of health the authority to formulate a Sanitary Code. Section 15 of the act confers upon parish and municipal boards the right to adopt rules, ordinances, and regulations on strictly local health and sanitary matters, with the proviso, however, that, "said rules, ordinances and regulations do not conflict with the rules and regulations of the Sanitary Code or of the Louisiana board of health."

It appears that the state board of health has adopted a Sanitary Code, which it has duly amended by the resolutions herein before referred to of January 20, 1923, and April 20, 1923.

[3] The Ordinance No. 16204, Council Series, as amended by Ordinance No. 5649, New Council Series, at least in so far as it authorized the city board of health to refuse permits to operate dairies unless the owners and proprietors thereof have their cows tuberculin tested in the manner and by the veterinarians designated by said city board of health rather than in the manner required by the state board of health, is in conflict with Act 150 of 1910 and with the Sanitary Code and the amendments thereof, and, in that respect, is null and void and of no effect.

[4, 5] The suggestion in the argument and brief of counsel that the Sanitary Code cannot apply because it was not promulgated until October 3, 1923, whereas the offense charged as against defendant was committed in May, 1923, cannot be acted upon by this court. The record shows that when counsel for defendant offered in evidence the tuberculin test regulations of the Sanitary Code of the state board of health, the only objection interposed thereto was as to their inadmissibility

because they were not identified by some one in authority, and not that they were inadmissible because they had not as a matter of fact been promulgated until after the commission of the offense with which defendant was charged. The objection as made was sustained by the court, which ruling was excepted to and a bill reserved and the regulations attached to the bill. Since the regulations were proved by the secretary of the state board of health, the ruling of the recorder was erroneous. However, as the evidence is before this court by reason of its being attached to and made part of the bill of exceptions, we have considered and applied it in reaching our conclusions in this case.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the conviction and sentence of defendant be set aside, that the affidavit be quashed, and the defendant discharged without day.

Rehearing refused by Division C., composed of OVERTON, ST. PAUL, and THOMPSON, JJ.