BLANCHARD, J.
In November, 1902, an officer of the Police force of the City of New Orleans appeared before the Judge of the Second City Criminal Court and made affidavit charging H. H. Pearson, Jr., C. H. Led-lie, Jos. H. De Grange and John G. Woods, who are described in the body of the affidavit as being “of the New Orleans Railway Company,” with violating section 1 of Act No. 64, p. 89, of Acts 1902, in that they failed to provide wire or wooden screens to separate the white and colored races in the cars of the company — mentioning time, street, number of ear, etc.
At the head of the affidavit this caption is given to that document: — “The State vs. H. H. Pearson Jr., Prest., C. H. Ledlie, 1st Vice Prest., Jos. H. De Grange, 2nd Vice Prest., Jno. G. Woods, Gen’l Manager” — from which *390 we learn that the parties accused hold, respectively, in the New Orleans Railway Company the positions of President, 1st Vice President, 2nd Vice President and General Manager of that corporation, which owns and operates a line of street railway in the City of New Orleans.
The parties were arrested and brought béfore the Second City Criminal Court. They were arraigned and pleaded not guilty, reserving the right to, later, withdraw this plea and file such exceptions or demurrers as they might deem proper. Whereupon they were released on bond.
Later, one of them, H. H. Pearson, Jr., the President of the Company, appeared and, first withdrawing his plea of not guilty, demurred to the affidavit, alleging that the matters therein contained are not sufficient in law to require him to answer the same.
The demurrer then avers the unconstitutionality of Act No. 64, p. 89, of Acts 1902.
It is set out, in substance, that the first and second sections of the Act seek to delegate to the officers of street railway companies, carrying passengers in cars, the power and duty of determining and declaring the races to which passengers belong, and assigning them to seats set aside for white or colored people according as to how the decision may be as to racial distinction. And it is charged that this is in violation of article 84 of the Constitution, which vests the judicial power of the State alone in certain courts named and authorized, and also in disregard of article 96 of the Constitution, which prohibits conferring judicial powers upon any officer other than the judges of the courts named in article 84, except as committing magistrates in criminal cases and such as may be necessary in towns and cities for the enforcement of municipal ordinances.
It is further set out, in substance, that the General Assembly, in enacting the third section of the Act of 1902, which makes the offense with which defendant Pearson is charged a misdemeanor, failed to fix a maximum and minimum penalty as required by article 155 of the Constitution; and that the section, in respect to the penalties fixed, is so uncertain, indefinite and indeterminate that the same is not susceptible of being car-, ried into execution and does not permit of any satisfactory determination as to the court vested with jurisdiction for the trial of offenders against the provisions of the statute.
The trial court sustained the demurrer and ordered the accused discharged.
The State appeals, and the appeal finds lodgment in this Court under the provision of the organic law which vests the Court with appellate jurisdiction in all cases where a law of the State is declared unconstitutional, and orders that the appeal on the law and the facts in such cases shall be directly to this tribunal from the court in which the case originated.
Biding — The legislation known as Act 64, p. 89, of Acts 1902, under which the appellee was proceeded against, is not new in Louisiana.
In 1890, by Act No. Ill, p. 152, of that year, similar legislation was enacted applicable to railway companies transporting passengers for hire within the limits of the State.
The Act of 1902 does nothing more than make the legislation of the earlier Act applicable to street railways operating car lines within the State — the former act having specially excluded street railroads.
In Ex parte Plessy, 45 La. Ann. 80, 11 South. 948, 18 L. R. A. 639, the constitutionality of the Act of 1890 was challenged, the question there presented being whether a statute requiring railroads to furnish separate but equal accommodations for the two races and requiring passengers traveling from one point in the State to another to confine themselves to. the accommodations provided for the race to which they belong, violated the thirteenth and fourteenth Amendments to the Constitution of the United States.
This Court held it did not and sustained the statute against the attack there made upon it.
Whereupon Plessy took the case by writ of error to the Supreme Court of the United States, which tribunal affirmed the judgment of this Court. See Plessy v. Ferguson, 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256.
While it was not distinctly put at issue in the Plessy Case that the statute attacked so.ught to delegate to officers of railway companies the power and duty of determining and declaring the race to which passengers belong, and assigning them to seats set aside for white or colored people according as to how the decision might be as to racial dis *392 tinetion, the question was raised, at least incidentally, and engaged the attention of Mr. Justice Fenner, the organ of the Court.
After stating (Ex parte Plessy, 45 La. Ann. 88, 11 South. 948, 18 L. R. A. 639) that the petitioner (Plessy) claimed the statute vested the officers of the railway company with a judicial power to determine the race to which the passenger belongs, he dismissed the contention with the observation that:—
“The discretion vested in the officer to decide primarily the coach to which each passenger by race belongs is only that necessary discretion attending every imposition of a duty, to determine whether the occasion exists which calls fo'r its exercise.”
We do not now feel called upon to go any further into the examination and discussion of that question, for it is not considered properly raised in the instant case.
Here the only charge against the appellee is that he violated that portion of section 1 of Act No. 64, p. 89, of Acts 1902, requiring the erection of screen partitions in cars for the separation of the races.
The section in question is as follows:—
“That all street railway companies carrying passengers in their ears in this State shall provide equal but separate accommodations for the white and colored races by providing two or more cars, or by dividing their cars by wooden or wire screen partitions, so as to secure separate accommodations for the white and colored races. No person or persons shall be permitted to occupy seats in cars or compartments other than the ones assigned to them on account of the race they belong to.”
There are here two distinct propositions. One is the requirement that street railway companies shall provide equal but separate accommodations for the white and colored races, either by separate cars, or by means of partitions erected in the same car. The other is that persons are not to be permitted to occupy seats in cars other than those set apart for them on account of the race to which they belong.
This proceeding arises under the first proposition and is taken against the appellee solely because the company of which he is president failed to provide separate accommodations for the white and colored races, as the statute commands.
He is not being prosecuted for permitting a colored person to occupy a seat in a car or eompartment allotted to white people, nor for permitting a white person to occupy a seat in a car or compartment allotted to colored people.
Nor is he being prosecuted for failing to assign a passenger to the car or compartment set apart for the race to which he (the appellee) should decide the passenger belonged, as is the requirement of section 2 of the Act.
It will be time enough to meet and decide those questions when cases come here directly involving the same. “It is both more proper and more respectful to a co-ordinate department,” declares Mr. Cooley in his work on Constitutional • Limitations (4th Ed.) p. 198, “to discuss constitutional questions only when that is the very lis mota.”
The first section of the Act required the appellee to provide separate accommodations for the races and the third section inflicts a punishment for his failure to do so. The portions of those sections, relating to his failure to provide separate accommodations and visiting a penalty upon him for not doing so, are alone involved in the case now before us.
If he had provided the separate accommodations required by the statute, it is to be-presumed persons of the white race would, without further action on his part, or that of his employees, have taken seats in the cars- or compartments allotted to them, and those-of the colored race would have taken seats in the car or compartment allotted to them.
The law commands this separation of the-races in street cars and the presumption is not authorized that people of either race will disobey the law, or that they will have to be coerced into obeying it by something done or threatened to be done at the time by the officials in charge of the car.
But for fear some persons of either race-might fail in their obedience to the law of separation, the second section of the Act punishes by fine or imprisonment any passenger who disobeys it by insisting on going into a car or compartment to which by race he or she does not belong.
In view of the penalty thus provided, it is-all the more to be presumed that, had the appellee not failed in his duty of providing separate accommodations, persons - of the two- *394 races would, without further action on- his part, or that of his employees on the cars, have taken the seats separately assigned them by the law.
All of which goes to establish that those sections or portions of the statute requiring separate accommodations for the two races, and inflicting a penalty on railway offlcials for failing to do this, and commanding people of the two races to use and occupy separately the cars or compartments set apart for each race, and inflicting a penalty for willful disobedience, may well stand and be executed independent of those other portions of the law which, in the opinion of the learned counsel for the appellee, are infirm, constitutionally, in that they delegate to officials of street railway companies the power and duty of primarily determining and declaring the race to which a given passenger may belong, and, by reason of such decision, assigning such passenger to a seat in the car or compartment set apart for people of his or her race.
It was competent for the General Assembly to have enacted a statute requiring alone, at the hands of street railway companies in the State, provision for the separate though iqual accommodation of the races and inflicting a penalty upon the officers of such companies for failure to do this.
It does not matter, for the purpose of this' discussion, that, in the statute, along with this, they put other provisions and requirements. Eliminate these other requirements, if you will, and what is left is complete in itself and susceptible of operation and fulfillment without the other.
To put it in a different way, one of the main intents of the statute was that street railway companies should provide separate accommodations for the races. This is complete in itself, as far as it goes, and capable of being executed wholly independent of those portions of the statute which require officials of the companies to decide upon the race to which a passenger belongs and assign him, in accordance with such decision, to a compartment set apart for people of that race, with power to enforce the assignment or compel the passenger to leave the car.
Nor are we quite prepared to presume the Legislature would not have passed the one without the other. See Moore v. City of New Orleans, 32 La. Ann. 742, 743; Cooley, Const. Law, 178.
Is the third section of the Act of 1902 obnoxious to article 155 of the Constitution — is the next question to engage our attention.
That article reads:—
“The General Assembly shall grade all misdemeanors and minor offenses against the State, and shall fix the minimum and maximum penalties therefor.”
That portion of section 3 of the Act of 1902 which is pertinent here is the following:—
“All officers and directors of street railway companies that shall refuse or neglect to comply with the provisions and requirements, of this act shall be deemed guilty of misdemeanor, and shall, upon conviction before any court of competent jurisdiction, be fined not less than one hundred dollars, or be imprisoned in the parish jail not less than sixty days and not more than six months.”
It will be observed that so far as the alternative penalty of imprisonment is concerned a minimum and maximum of punishment is fixed.
- The contention of • the 'appellee is that in not fixing a maximum, for the fine imposed, and the section leaving it discretionary' with' the judge to fine or imprison — one or the other, not both — the Constitution is violated,' the part of the section • quoted is void,- and no penalty at all under it can be imposed.
- Article 155 of the Constitution of 1898 is ■ new, in the sense that it is not found in the preceding Constitutions of - the State.
Up to the time of the enactment of Act No.-64,-p. 89, -of Acts 1902,‘which statute was approved by the Governor June 26, 1902; • the General Assembly had, pursuant, to the direction of article 155, passed no law grading misdemeanors and minor offenses against '■ the State and fixing minimum and maximum penalties therefor.
There was, therefore, at the time no act of the Legislature specifically carrying into effect article 155.
Subsequently a statute was enacted the title of which is:—
“An Act to grade misdemeanors and minor offenses against the State and to fix the minimum and maximum penalties therefor, in accordance with the direction to the General *396 Assembly contained in article 155 of the Constitution.”
This is known as Act No. 107, p. 161, of Acts 1902, and it was approved by the Governor July 7, 1902.
It does not go any further than grading certain misdemeanors and minor offenses therein named and fixing minimum and maximum penalties therefor. It contains no general clause applicable to misdemeanors and minor offenses generally, other than those named, and fixing a minimum and maximum penalty therefor, which should apply, as the law governing, in cases where the Legislature, in acts already passed or thereafter to be passed, failed to fix the minimum and maximum penalties, or failed in respect to either, for the minor offenses described and punished in such acts.
On the state of the ease as just here presented, two contentions arise. One on part of the appellee that the latter clause of article 155, to-wit: — “and shall fix the minimum and maximum penalties therefor,” is mandatory, and the Legislature, in enacting the third section of the Act of 1902, should have observed its command; that right then and there that part of the article could and should have been carried into effect by fixing a minimum and maximum penalty for the misdemeanor denounced, and a failure to do so contravenes the organic law.
The other contention, made on part of the State, is that the framers of the Constitution of 1898 were careful to provide against the repeal of existing laws, not inconsistent with its provisions, and did so in article 325 where it declared that:—
“All laws in force in this State, at the time of the adoption of this Constitution, not inconsistent therewith, and constitutional when enacted, shall remain in full force and effect until altered or repealed by the General Assembly, or until they expire by their own limitation.”
That at the time of the adoption of the Constitution of 1898 there was a law, not inconsistent with its provisions, nor since altered or repealed, and, therefore, remaining in force, which is applicable to article 155 and its commands in all cases where the Legislature, in enacting a statute making something described therein a misdemeanor and providing a penalty therefor, fails to fix the minimum and maximum punishment; and that under such pre-existing law, in connection with the third section of the Act of 1902, the appellee may be sentenced, if found guilty, without violating article 155,
The law referred to is section 982 of the Revised Statutes 1876 and reads as follows:—
“Wherever the punishments of fine and imprisonment are left by law at the discretion of any court, the fine shall not exceed one thousand dollars, nor the imprisonment two years.”
Here, it is urged, is a law which meets just such cases, as the present one, of omission on part of the Legislature to fix a maximum penalty for offenses denounced and punished, and there being such a law in force when the statute of 1902 was enacted, it has the effect of saving the Act, in the particular mentioned, from the anathema of unconstitutionally hurled at it.
If the law embodied in Rev. St. 1876, § 982, had been enacted since the adoption of the Constitution of 1898, would it have the effect of saving that part of the third section of the Act of 1902 under discussion from unconstitutionality?
We must hold it would, for it would be a general statute fixing the maximum punishment for offenses, which otherwise would be left to the discretion of the trial court — something, in the case of misdemeanors, the Constitution commands, in its article 155, shall not be done.
It was competent for the Legislature to have written in the third section of the Act of 1902 that the fine imposed shall not exceed one thousand dollars. It could have made the clause under discussion read:— “shall, upon conviction before any court of competent jurisdiction, be fined not less than one hundred dollars and not more than one thousand dollars,” instead of stopping, as it did, with the imposition of a fine “not less than one hundred dollars.”
If this be so, then it was not absolutely necessary (unless the Legislature desired to make the maximum fine less than one thousand dollars) to add the words: — “and not more than one thousand dollars,” since, by general statute already existing, that maximum of fine was fixed for offenses in all cases where the particular statute, making the thing done or not done an offense and pro *398 viding for its punishment, left the maximum fine unnamed.
If, then, the law embodied in Rev. St. 1876, § 982, would suffice to save the pertinent part of the Act of 1902 from unconstitutionality had it been enacted since the adoption of the Constitution of 1898, the question recurs whether Rev. St. 1876, § 982, has an equal effect to do this though it be a statute antedating in enactment the adoption of the Constitution of 1898.
This cannot be doubted in view of the first declaration of article 325 of that Constitution heretofore referred to and quoted.
We find-no inconsistency between the law as found in the section of the Revised Statutes and article 155 of the Constitution. But even if there were, in view of the third declaration of article 325 of the Constitution, such inconsistency would not avail, for the present and until the Legislature acted, to render the section of the Revised Statutes inoperative.
The third declaration of article 325 is:—
“The provisions of all laws, which are inconsistent with this Constitution, shall cease upon its adoption, except that all laws which are inconsistent with such provisions of this Constitution as require legislation to enforce them, shall remain in full force and effect until such legislation is had.”
The most cursory reading of article 155 of the Constitution shows that its provisions require, legislation to enforce them. It is left for the Legislature to do by general act, or in each particular act it may pass relating to misdemeanors, what the latter clause of the article commands, viz.: — fix the minimum and maximum penalties for such offenses.
But, in any event, legislation is necessary.
The article does not direct that the General Assembly, in enacting each particular law relating to misdemeanors shall, in such act, fix the minimum and maximum penalties therefor. If it did, such direction — being a mere command — would undoubtedly be self acting.
It directs the grading of misdemeanors and minor offenses and the fixing of minimum and maximum penalties therefor.
The first part of the article is unquestion-' ably merely directory. The latter part may be mandatory. But if mandatory, it may be done by general statute and we find such a general statute in force limiting maximum fines, while the' particular statute under which appellee is being proceeded against limits the minimum fine assessable against him. As- we have seen Act No. 107, p. 161, of Acts 1902, purporting to carry article 155 into effect, really does so as to certain minor offenses only, and the said Act, by its thirteenth section, leaves unrepealed laws not inconsistent with it. Section 982, Rev. St. 1876, is not inconsistent, with it.
We hold that section 982 and the statute under which the appellee is being prosecuted, taken together, meet the requirement of article 155 of the Constitution, and lift that portion of the third section of the statute, under discussion, out of the “slough of despond” — ! e., unconstitutionality.
The last contention of the appellee is that the third section of the Act, in respect to the penalties fixed, is so uncertain, indefinite and indeterminate that the same is not susceptible of being carried into execution and does not permit of any satisfactory determination as to the court vested with jurisdiction.
• This is in the nature of a plea to the jurisdiction of the Second City Criminal Court.
With it as such we have nothing to do on this appeal. The case could only reach and did only reach this Court on appeal by reason of the fact that the Second City Criminal Court, by judgment rendered, is considered to have declared a law of the State unconstitutional.
Our enquiry on the appeal is, therefore, limited to that sole question. Const, art. 85; Louisiana Society v. Moody, 52 La. Ann. 1815, 28 South. 224.
Limiting it to that, we find the law attacked, in the features of it properly before the Court, is not unconstitutional. That must necessarily end the case here in its present foi'm.
If It be true, the Second City Criminal Court is without jurisdiction to try and determine the case, or the Judge thereof is without authority to sit upon it as Committing Magistrate, and nevertheless jurisdiction is taken in one or the other of the capacities named — either as Judge or as Committing Magistrate — the Constitution, in such case, gives -no appeal from such tribunal to this Court.
Another and altogether different process *400 and remedy is provided by law to reach inferior courts which take cognizance of cases of which the law has not vested them with jurisdiction.
We are not to be understood as expressing or intimating the opinion that the Judge of the Second City Criminal Court is without jurisdiction, either to try the case or sit upon it as Committing Magistrate. We reserve opinion as to that.
And we also reserve opinion as to the power of the Criminal District Court of the Parish of Orleans over the ease, as well as to whether either of the tribunals mentioned, or any other, has authority to sit upon the case and determine it.
The judgment sustaining the demurrer, dismissing the affidavit made against the accused and ordering his discharge, is annulled- and reversed, and it is now adjudged and decreed that the constitutionality of Act No. 64, p. 89, of Acts 1902, in the respect that the same is at issue herein, be sustained.
It is further ordered and decreed that the demurrer filed by the accused be overruled and that the case be remanded to the Second City Criminal Court with instructions to proceed therewith according to law.
It is further ordered, etc., that the costs of the appeal be borne by the appellee.
BREAUX and MONROE, JJ., dissent.