## O'LEARY v. ILLINOIS CENT. R. CO.

[69 South. 713.]

1. CARRIERS. *Passenger accommodations. White and negro passengers. Sufficiency. Action. Instructions. Trial. Argument of counsel.*

The statute law of Louisiana (Act No. 111 of 1890), requiring separate accommodations for white and negro passengers on railroad trains, applies to intrastate passengers and it was error to give an instruction on the statute, in an action by a passenger on an interstate train for being forcibly deprived of his seat in a comfortable car to accommodate a negro excursion and to ride in the caboose.

2. TRIAL. *Instruction. Argument of counsel.*

Every litigant in a civil case has a vested constitutional right to have his case presented to the jury by counsel, and to have the argument of his counsel heard by the jury, untrammeled by any suggestion from the court that are calculated to minimize the force or cheapen the worth of legitimate argument, and an instruction which states that the unsworn statements and arguments of attorneys are neither evidence nor law, and cannot·be considered, while technically accurate, intimates that the attorneys may make statements not supported by the evidence, and practically directs the jury to disregard their arguments and is to be condemned.

APPEAL from the circuit court of Attala county.
HON. J. A. TEAT, Judge.
Suit by J. B. O'Leary against the Illinois Central Railroad Company. From a judgment for defendant, plaintiff appeals.
The facts are fully stated in the opinion of the court.

*Flowers, Brown & Davis,* for appellant.

The passenger plaintiff was at the time en route from Kosciusko to New Orleans, Louisiana. He was an interstate passenger.

The statute of Louisiana quoted in the said instruction appears on pages 1498 and 1499 of Wollf's "Constitution and Revised Laws" of Louisiana. And this statute has been expressly held by the Louisiana court to apply only to the transportation of intrastate passengers. *State ex rel* v. *Hicks, et al.,* 44 La. Ann. 770; *Ex Parte Plessy,* 45 La. Ann. 80; *State* v. *Pearson,* 110 La. 387, 390. And the supreme court of Mississippi has held the same thing. *L. N. O. & T. Ry. Co.* v. *Miss.,* 66 Miss. 662.

Though in *Alabama & Vicksburg Ry. Co.* v. *Morris,* 103 Miss. 511, our court held that the law could be enforced to require the separation of the races as to a passenger buying a ticket at Vicksburg entitling her to passage over defendant's line to Meridian, both points being within the state. The Morris case went to the supreme court of the United States where it was dismissed on motion of plaintiff in error, the railroad company.

But the rule is settled in Louisiana that the statute depended upon in the present case has no application to interstate passengers. And the holding of the Louisiana court has been upheld by the supreme court of the United States. *Plessy* v. *Ferguson,* 163 U. S. 537, 41 L. Ed 256.

So it appears that instruction 3 was erroneously given for several reasons. In the first place it is not proper to take a statute and submit it to a jury for its construction. In the second place the statute if operative at all in this case would be misleading when given to the jury as a whole. And in the third place the statute has no application whatever to the case at bar. And the jury was told that "it was the duty of conductors, passengers and railroad officials to obey said laws." It was not the duty of the passengers and conductor to obey the said laws in this instance. The said laws had nothing in the world to do with it. We cannot conceive of the court saying that this error is not fatal under the peculiar circumstances of this case.

*S. L. Dodd, Leftwich & Tubb* and *T. S. Ward,* for appellant.

It will be observed that the wrong and injury done to plaintiff took place in the state of Louisiana, at Hammond, and thence to New Orleans, in said state, and it became the duty of the judge to test the negligent conduct of the Railroad Company according to the laws of the state of Louisiana, of which now under our statute the trial judge must take judicial notice. See Code of 1906, section 1015. In the light of the sharply disputed questions of fact, the charges asked by and granted to the defendant must be clearly read and analyzed, and since the case must turn on the correctness of the charges granted the defendant in the main we will give to them most of our attention in this brief.

Charge number three granted the defendant Company is found at page 218 of the record, and is as follows: The court instructs the jury for the defendant that the laws of Louisiana as bearing upon separate coaches or compartments for the races are as follows: "That all railway companies carrying passengers in their coaches in this state shall provide equal but separate accommodations for the white and colored races, by providing two or more passenger coaches for each passenger train, or by dividing the passenge coaches by a partition so as to secure the separate accommodations; provided, that this section shall not be construed to apply to street railroads. No person or persons shall be permitted to occupy seats in coaches other than the ones assigned to them on account of the race they belong to. That the officers of such passenger trains shall have the power and are hereby required to assign each passenger to the coach or compartment used for the race to which such passenger belongs; and any passenger insisting on going into a coach or compartment to which by race he does not belong, shall be liable to a fine of twenty-five dollars or in lieu thereof

to imprisonment for a period of not more than twenty days in the parish prison, and any officer of any railroad insisting on assigning a passenger to a coach or compartment other than the one set aside for the race to which said passenger belongs shall be liable to a fine of twenty-five dollars or in lieu thereof to imprisonment for a period of not more than twenty days in the parish prison; and should any passenger refuse to occupy the coach or compartment to which he or she is assigned by the officer of such railway, said officer shall have power to refuse to carry such passenger on his train, and for such refusal neither he nor the railway company which he represents shall be liable for damages in any of the courts of this state."

And it was the duty of both passengers and railroad officials to obey said laws." 2 Const. & Rev. State, La., page 1498.

It will be observed that this copy or this charge is a literal copy of the laws of Louisiana, and is put within quotation marks. The whole statute is thrown to the jury as a tub to the whale, with the parting admonition of the court in the last sentence, "and it was the duty of both passengers and railroad officials to obey said laws." What the law meant, how it should be weighed and considered by the jury, was left wholly to the jury to speculate upon; it was not digested and interpreted in plain terms by the court, as plain common business men might read and interpret it, but it was tossed to them in the very terms in which it was ground out in the legislative mill, with the admonition that it was the duty of the passengers and the railroad officials to obey it. It is the duty of a trial court always under our jurisprudence to construe any writing which is introduced in evidence before the jury, and not to refer it to the jury for the jury to speculate on its meaning. *Life Ins. Co.* v. *Herron,* 56 Miss. 643; *Railroad Co.* v. *Anderson,* 110 Miss. 4

.57 Miss. 829; *Brown* v. *Roberts,* 58.Miss. 126; *Whitney* v. *Cook,* 53 Miss. 551.

All the more necessary is it that the lower court bring to the jury's attention the laws of a foreign. state with which they are entirely unfamiliar, to digest and present them in plain and unambiguous terms, that the jury may read and understand them. It was for a long period of time in Mississippi that the foreign law had to be proved as any other fact, but our legislature recognizing that the courts themselves supposed to be better capacitated in law learning should take judicial notice of foreign laws. Code of 1906, section 1015. And if the court must take judicial notice of those laws, it is not only its duty but the universal practice for it to interpret what they mean. These laws may be expressed in a foreign language, they may come in the technical statutory form that it is difficult to interpret, requiring lawyers or men with the judicial mind to digest and apply them, and it is useless we think to invoke authority to the effect that the court must interpret these laws, and not dish them out to the jury *in totidem verbis.* See subject "Interpretation," 1 Bouvier's Law Dictionary.

Now in the light of the trite observations we have made touching this matter, let us deal with the statute of Louisiana which was quoted in full in charge three. The first paragraph of the statute provides that equal but separate accommodations shall be provided for the white and colored races by the railroad company furnishing two or more passenger coaches for each train or by dividing the passenger coaches by partition. Street cars are exempted, and the last sentence of the paragraph is that no person or persons shall be permitted to occupy seats in coaches other than the ones assigned to them on account of the race they belong to. The complaint in the declaration is the opposite to what is common. The plaintiff, a white man, sued the company because they de-

prived him of passage in a comfortable and clean coach, by driving him out of it and into a filthy caboose, and that he was therefore not given equal and separate ac- comodations with the negroes.   One of the leading vices of the granting of this charge is that the second para- graph of the statute quoted says after stating that the passenger shall occupy the coach or compartment to which he is assigned by the conductor, and that if he insists on going into a coach or compartment of the race to which he does not belong, he shall be liable to fine and impris- onment in the parish prison.   This second paragraph finally enacts that if the passenger refuses to occupy the coach or compartment to which he is assigned by the offi- cer of the company, that he, the officer may refuse to carry him, and for such refusal neither he nor the rail- road company shall be liable for damages in any of the courts of the state.   Now the main vice of submitting this charge to the jury without comment as to its mean- ing is its palpable liability to lead the jury astray as it no doubt did.   On reading the second paragraph, the plain juryman doubtless concluded that as O'Leary was in the state of Louisiana and bound to obey its laws, that he ought to be grateful that the officials did not put him off of the train and have him fined twenty-five dollars or put in the parish prison, and that it was a matter of grace in the Railroad Company that he escaped the in- fliction of such punishment.   This charge leaves totally out of consideration and leaves the jury at sea as to the liability of the company for its negligence in not furnish- ing plenty of passenger cars and in not keepig them light- ed and clean, and on some flimsy pretext in driving a white passenger out of a comfortable coach and giving it to negroes, and then quartering the white passenger in a filthy caboose from three to six coaches in the rear. But it is almost idle to speculate on the view that the jury took of this charge.   It is the crude undigested sta- tute of the state of Louisiana as it seems, and it was the

,only law which the jury were bound to obey. This assignment of error presents squarely to the court this query: Where an interstate train carrying passengers after it reaches a foreign state is guilty of negligence and guilty of disregarding the rights of the passengers, can the trial court of this state quote *in totidem verbis* to the jury the undigested statute, telling the jury that it is the duty of the passengers and the railroad officials to obey that law and that law only of course, and thus leave it with them, almost every fact in the case being controverted by the witnesses. It is true enough that the next instruction, charge four, tells the jury what the law of Mississippi is on the subject, but the preceding charge had impressed the jury no doubt, as did the arguments of those to follow that it was the law of the state of Louisiana that controlled in the case, and that law dominated their verdict; so that the jury was necessarily left to follow their own vain speculations as to what the statute meant, and were thus led astray by this charge number three.

Charge number five is as follows, which we here quote for the convenience of the court: "The court instructs the jury for the defendant that in order for them to reach a conscientious and legal verdict in this case, they must arrive at it by relying upon the credible evidence in the case and upon the instructions given by the court. The unsworn statements and arguments of the attorneys for either side and passion and race prejudice, if any, are not evidence or law and under your oaths you cannot consider them as evidence or law in reaching a verdict in this case."

This charge encroaches upon the constitutional rights of the citizen in submitting his grievances to the courts of the country by the mouth of counsel. By section 25 of the Constitution, it is provided that no person shall be debarred from prosecuting or defending any civil cause for or against him or herself before any tribunal of

the state by him or herself or counsel   or   both.  The
charge seems to be constructed and so worded as to warn
the jury to give no heed to the unsworn statements and
arguments of attorneys for either side and passion and
race prejudice if any.   It overlooks the law. of the land
that all attorneys practising before the courts are sworn
and are there practising under their oaths, and that it
is a vested constitutional right in every litigant to have
his cause presented to the jury by counsel, and to have
the arguments of such counsel heard by the jury untram-
meled by insinuating suggestions from the court that
these arguments ought not to be heeded.   It is true this
charge in its last sentence says, "that you should not
consider them (meaning the statements and arguments of
counsel) as evidence or law in reaching a verdict in this
case."   The essential implication of a charge like this is
to the effect that the jury should hear the law and the
evidence, and then take the bit in their own mouths, and
ignore all pleas and arguments of counsel in presenting
their client's claims.   In granting this charge at the
request of the defendant, the special judge in the trial
court went far afield, and invaded the prohibited domain
of the constitutional rights of this plaintiff.

   The charge is further vicious in this, when it says, "and
passion and race prejudice, if any, are not evidence or
law and under your oaths you cannot. consider them evi-
dence or law in reaching a verdict in this case."   The
only passion or race prejudice found in this case, if any
at all and we think there is none, was imported into it by
the evidence.   If the plaintiff's counsel transgressed the
rules of propriety in their arguments and appealed to
passion and race prejudice, there was a remedy for the
defendant's counsel; it was their privilege to take down
the words of counsel which transgressed the proprieties
and the evidence, and have the court then pass upon the
propriety, and warn the jury to disregard such argu-
ments.   The court had no right to denounce it ahead of

'time and in general; it could only deal with it in the concrete; and the granting of the charge was a criticism of the right of argument that the plaintiff ought not to be called upon to bear. This is not a question of the court's restraining counsel from traveling out of the record or from appealing to passion or race prejudice in an improper way, or in stating unjustifiable facts. Here the court injects itself as a censor and denounces the right of argument by just inference and the force of argument, and encroaches upon the constitutional privilege of appellant, which is not permissible. *Martin* v. *The State,* 63 Miss. 505; S. C. 56 Am. Rep. 812 and note by editor; 2 Enc. of Pleading & Practice, 699; 2 A. & E. Enc. of Law, 699-700, note 1, citing many cases and at length BREWER, J., in *Douglas* v. *Hill,* 29 Kan. 527; 28 Cyc. 1470a and notes.

Within the limit of the testimony the argument of counsel is and should be free, but that freedom does not extend either to the statement or the assumption of facts, or to commenting upon facts not in evidence, to the prejudice of the adverse party. *Perkins* v. *Guy,* 55 Miss. 153; *Cavanah* v. *State,* 56 Ib. 299; *Cross* v. *State,* 68 Ala. 476; *Wolffe* v. *Minnis,* 74 Ib. 386; *State* v. *Smith,* 75 N. C. 306; Proffat on Jury Trials, sec. 250.''

The charge we are assailing amounts to censorship or restriction by the court in a plain and palpable instruction to the jury, as to the heed they should give to the arguments of counsel.

In 2 Enc. of Pl. & Pr., page 700, the distinguished Judge ROGER A. PRYOR, from the note, is quoted as saying: ''Not a matter of discretion.— In *Fareira* v. *Smith* (C. Pl.), 22 N. Y. Supp. 939, Judge PRYOR said: 'Be the issue simple or complex, counsel have a legal right to be heard upon it before the jury. If the court may deny the privilege upon the assumption that the case is too plain for argument, then the exercise of the privilege stands not upon the legal right but upon the misconception or

Oct. 1915]    O'Leary v. Ill. Cent. R. Co.    55,

110 Miss.]                Brief for appellee.

caprice or arbitrary volition of the court. To this pro-position I cannot assent. The *dictum* in its support (*People* v. *Cook,* 8 N. Y. 77, 59 Am. Dec. 451), is of no authority, and is repugnant alike to the rights of litigants and the duty of counsel, 2 Rum. Pr. 304; *Douglas* v. *Hill,* 29 Kan. 527, per Brewer, J.; *Garrison* v. *Wilcoxson,* 11 Ga. 154.' ''

If the court may say to the jury as it did in charge five,. "that in order for them to reach a conscientious and legal verdict in this case, they must arrive at it by relying up-on the credible evidence in the case and upon the instructions given by the court," then what becomes of the right of argument guaranteed the citizen by the Constitution?

*Mayes & Mayes,* for appellee.

After the original brief was filed by Mr. Dodd, and after we had prepared our answer to Mr. Dodd's contentions, Mr. J. N. Flowers was associated with Mr. Dodd;. and now, at the last hour, Mr. Flowers comes forward. with this entirely new point, to wit, that the statute is not applicable, that the statute relates to the duty that the railroad owed solely to persons engaged in intra, as distinguished from interstate travel.

This court has repeatedly declined to consider such questions as these, raised for the first time in the supreme court. For this reason, if for no other, we feel assured that this court will not sustain Mr. Flowers' contentions, advanced in his rejoinder brief.

In this rejoinder brief, Mr. Flowers cites numerous authorities claimed by him to be in support of his contention that the statutes in question do not control the case at bar; but when this court comes to examine those authorities, it will see that they are not in line. Those authorities have points in them which distinguish them from the case at bar; as for instance, a number are cases dealing with the Jim Crow law, requiring the street railway

companies to separate the races by screens; it appearing
in those cases that the street railway companies were not
engaged in interstate commerce, but were operating en-
tirely within the limits of certain cities and states.

On the other hand, supporting our contention that the
statutes in question are applicable to the case at bar we
call the court's attention to the case of *A. & V. Ry. Co.* v.
*Morris*, 103 Miss. 511, this being a case recently decided
by our supreme court, involving the question as to wheth-
er or not the Mississippi statute, providing for equal and
separate accommodations for the races was controlling
in a case where the passengers were engaged in inter-
state travel. The plaintiff in that case was a white
lady, who was traveling from Vicksburg, Mississippi, to
New York City. She took passage in a sleeping car on
one of defendant's trains, somewhere along the route
within this State—Meridian, we believe. A negro pas-
senger boarded this same train, holding a sleeping car
ticket, which entitled him to a berth in this same car in
which the white lady had taken passage. The lady de-
murred to this, demanding that the conductor either as-
sign her or the colored passenger to another coach; the
conductor refused to comply with her demand, and she
filed a suit for damages on account of the indignity im-
posed upon her by forcing her to ride in the same coach
with a person of a different race. The defendant in
that case raised the very point which was raised here—
to wit, that the Mississippi statute requiring railroad
companies to furnish separate accommodations for the
races, was not applicable where the passengers were
engaged in interstate travel. But in the opinion, ren-
dered by Judge Cook, this honorable court expressly
held that the case of the *L. N. O. & T. R. R. Co.* v. *State*,
66 Miss. 662, that being the decision upon which our op-
ponents pin their faith, was not applicable to this sort of
case. The court said, (see last paragraph, p. 517):

". . . It would serve no good purpose to review the several cases decided by the supreme court of the United States, and cited in support of the contention of appellant, as we believe no case can be found decisive of the precise question raised in the instant case. The cases most nearly approaching the subject have been analyzed and, in our opinion, none of them have pronounced a state statute, similar to our own, an invasion of the national authority to regulate and control commence between the states, should it be interpreted to mean that the statute applies to interstate travelers aboard trains forming a part of a chain of carriers engaged in the business of transporting passengers taken up within the state for carriage to a point without the state. This is exactly the question involved in this case, and such a passenger is claiming damages because negro passengers were assigned to the same Pullman car to which she was assigned, and which she was compelled to occupy, or retire to one of the day coaches attached to the train; there being no sleeping car other than the one occupied by the negroes. . . .

"The legislature, in the exercise of its power to police the highways of commerce running through the state, enacted the statute in question to promote the peace, comfort and general welfare of the public. . .

"A riot upon an interstate train growing out of the refusal of common carriers to recognize a situation known to every Mississippian—black and white—would endanger the lives and disturb the peace of all persons passengers on the train, intrastate and interstate; and we therefore decline to limit the application of the statute to intrastate commerce. Possessing the knowledge of local conditions common to all residents of our section, we confess some surprise that there was no sequel to the event described by the record."

. Our opponent, Mr. Flowers, says that this case of the *A. & V. R. R. Co.* v. *Morris,* from which we have just

quoted, was appealed to the supreme court of the United States, but that some compromise, or other disposition of the differences, was reached before the case was tried there. Possibly that is true. The limited time we have had in which to reply to this brief has prevented us from looking into that matter. But be that as it may, the opinion of the Mississippi court in this case is the last word on the law controlling these matters. While it may be true that the opinion of the Mississippi supreme court has not been affirmed by the supreme court of the United States, it is also true that that opinion has not been reversed—which is to say that the opinion of our supreme court stands supreme today. We know that our court went into this matter with great care and detail, and that the opinion of the court, as rendered in the Morris case, is decisive of the questions here involved. We know that when this court shall have read the briefs of counsel, and the record in the cause, it will be impressed with the fact that appellant has had a fair trial in this cause, and that the verdict of the jury was fully warranted by the testimony. And for that reason, we feel, assured that this court will affirm the judgment of the court below.

STEVENS, J., delivered the opinion of the court.

Appellant, as plaintiff in the court below, brought this suit against the Illinois Central Railroad Company to recover damages for the alleged wrongful acts of the defendant's conductor and employees in forcing the plaintiff to give up his seat in a vestibule car and to accept insufficient accomodations in an inferior coach or caboose, while plaintiff was a regular passenger on an excursion from Kosciusko, Miss. to New Orleans, La. The Declaration charges that plaintiff, with several associates, boarded a well-advertised excursion train being run by the defendant company from Aberdeen, Miss., to New Orleans, La.; that plaintiff and his companions

secured comfortable revolving chairs in a handsome plush coach, equipped with good lights and supplied with drinking water and the other usual conveniences of a first-class passenger coach; that he was well cared for in this car until the train reached Hammond, La., where the conductor of the train ordered plaintiff and the passengers of the coach in which plaintiff was seated to vacate this coach to make room for a large crowd of negro excursionists; that plaintiff and his friends protested, but that the conductor, with the aid of a policeman, armed with his "billy," ordered plaintiff from this vestibule car, which had been assigned to white passengers, and attempted to move plaintiff with force and arms; that the conductor used violent and offensive language, and permitted the car to fill rapidly with negroes, before plaintiff and the other white people, both ladies and gentlemen, vacated; that plaintiff was forced and compelled against his consent and over his protest to leave his comfortable seat and surroundings, and to ride in a caboose or inferior coach, over which was written "For Colored People Only," and which was packed and crowded with negroes and toughs, and where there were no seats or proper accommodations; that plantiff was compelled to ride the balance of his journey on the arm of a seat filled with other passengers. There are other allegations in the declaration not necessary to detail. Issue was joined and much evidence introduced by both parties on the trial of the case below. A verdict was returned for the defendant, and from the judgment based thereon plaintiff prosecutes this appeal.

The evidence on behalf of the plaintiff, briefly stated, is to the effect that, while plaintiff and his companions were enjoying the journey in a clean and expensive coach, well provided with seats, lights, and water, he was forced by the conductor, with the assistance of an officer from Hammond, La., to surrender his seat and to betake himself and his baggage through several coaches, already

crowded, to the rear coach of the train; that this rear coach was ''just a dirty, filthy caboose, with just a dingy old oil lamp, with the chimney blacked;'' ₐthat the floor of this coach was littered with tobacco stubs and smeared with tobacco juice and dirt; that plaintiff could not obtain a seat, but was compelled to ride on the arm of the seat of other passengers; that this coach had a terribly bad odor and was not provided with drinking water. The evidence on behalf of plaintiff is further to the effect that the conductor ''grabbed hold of Mr. O'Leary'' and pushed him out on the platform; that in this the conductor was assisted by the officer; that plaintiff was humiliated and wronged by the offensive and abusive treatment of the conductor, as well as the porter and the officer, and that his contract of carriage was violated. The evidence for the plaintiff shows, also, that negroes began to file into the car before the plaintiff and his companions had time to move out. The evidence discloses additional details and circumstances in aggravation of the complaint. The testimony on behalf of the defendant was in sharp and direct conflict with that on behalf of the plaintiff.

We are asked to reverse the case because of the granting of erroneous instructions in behalf of the defendant. Instructions Nos. 3 and 5, complained of, are in the following language:

''No. 3. The court instructs the jury, for the defendant, that the laws of Louisana, as bearing upon separate coaches or compartments for the races, are as follows:

''That all railway companies carrying passengers in their coaches in this state shall provide equal, but separate, accommodations for the white and colored races, by providing two or more passenger coaches for each passenger train, or by dividing the passenger coaches by a partition so as to secure separate accommodations: Provided, that this section shall not be construed to apply

to street railroads. No person or persons shall be permitted to occupy seats in coaches other than the ones assigned to them on account of the race they belong to.

"That the officers of such passenger trains shall have the power and are hereby required to assign each passenger to the coach or compartment used for the race to which such passenger belongs; and any passenger insisting on going into a coach or compartment to which, by race, he does not belong, shall be liable to a fine of twenty-five dollars, or in lieu thereof to imprisonment for a period of not more than twenty days in the parish prison; and any officer of any railroad insisting on assigning a passenger to a coach or compartment other than the one set aside for the race to which said passenger belongs shall be liable to a fine of twenty-five dollars or in lieu thereof to imprisonment for a period of not more than twenty days in the parish prison; and should any passenger refuse to occupy the coach or compartment to which he or she is assigned by the officer of such railway, said officer shall have power to refuse to carry such passenger on his train, and for such refusal neither he nor the railway company which he represents shall be liable for damages in any of the courts of this state.

"And it was the duty of both passengers and railroad officials to obey said laws."

"No. 5. The court instructs the jury, for the defendant, that, in order for them to reach a conscientious and legal verdict in this case, they must arrive at it by relying upon the credible evidence in the case and upon the instructions given by the court. The unsworn statements and arguments of the attorneys for either side, and passion and race prejudice, if any, are not evidence or law, and under your oaths you cannot consider them as evidence or law in reaching a verdict in this case."

For the purposes of this case it is not necessary to set out in detail the evidence for the railroad company. It is conceded every complaint made by the plaintiff

is contradicted by the proof on behalf of the defendant. The case was one for the jury to decide upon proper instructions.

Instruction No. 3 presents to the jury *in haec verba* the statute of Louisiana providing for and forcing separate accommodations for white and negro passengers. The granting of this instruction in the present case was, in our judgment, error. This statute has been held by the Louisana court to apply only to intrastate passengers, and had no direct bearing upon the rights of plaintiff, an interstate passenger. *State ex rel.* v. *Hicks et al.,* 44 La. Ann. 770, 11 So. 74; *Ex parte Plessy,* 45 La. Ann. 80, 11 So. 948, 18 L. R. A. 639; *State* v. *Pearson,* 110 La. 387, 390, 34 So. 575; *Plessy* v. *Ferguson,* 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256. Under the peculiar facts of the instant case, the giving of this instruction amounted in reality to the granting of a peremptory instruction. By the concluding paragraph of this instruction the jury are told that "it was the duty of both passengers and railroad company officials to obey said laws;" that is, to obey the requirements of this particular statute of Louisiana. The jury by this instruction are told that, if the conductor had not removed plaintiff from the coach in question, the conductor would have been liable to fine and imprisonment, and that, if the passenger refused to occupy the coach or compartment to which the officer had assigned him, the railway company might refuse to carry the passenger any further, and for such refusal the railroad company would not be liable for damages. The jury must have been imbued with the idea that plaintiff on the occasion in question was insisting upon the law being violated, while the conductor was simply obeying the law, and thereby avoiding the unpleasant experience of being cast into a parish prison. The statute in question had nothing to do with this case. If it had no application to the case, then the giving of it is reversible error. We do not understand the grava-

men of the complaint to rest upon the mere compulsory removal from one coach to another. The chief ground of plaintiff's complaint lies in the fact, according to plaintiff's evidence, that he was forced to surrender ample and comfortable accommodations, and to ride the balance of his journey without a seat and without decent accommodations, to which, under his contract of carriage, he was entitled. The consideration of this main issue by the jury must have been beclouded by instruction No. 3.

We must condemn, also, instruction No. 5 granted the defendant. Every litigant in a civil cause has a vested constitutional right to have his case presented to the jury by counsel, and to have the arguments of his counsel heard by the jury, untrammeled by any suggestions from the court that are calculated to minimize the force or cheapen the worth of a legitimate argument. It is true that this instruction simply tells the jury that unsworn statements and arguments of attorneys are not evidence or law in the case. As a technical proposition of law this might be true. There is in this instruction, however, a veiled suggestion that counsel in this case might indulge in "unsworn statements"—a warning that the attorneys, as sworn officers of the court, are liable to present to the jury statements not justified by the evidence. By it the jury is really in fact directed to disregard the arguments of the attorneys. The legitimate pleas and arguments of counsel are helpful to a jury, and it is the duty of the jury to give respectful consideration to the arguments of counsel *pro* and *con.* If counsel so far forgets himself as to travel out of the record, then his adversary has the right to except, and the court has the right to reprove counsel, and to condemn any illegitimate utterances.

It will not be necessary to consider the other instructions complained of. Let the judgment of the lower court be reversed, and the cause remanded.

*Reversed and remanded.*